## Commonwealth *vs.* Jerry Dixon.

Suffolk. October 7, 2010. - December 9, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.[1]

*Rape. Limitations, Statute of. Identification. Deoxyribonucleic Acid. Constitutional Law,* Indictment, Identification. *Due Process of Law,* Statute of limitations, Identification. *Practice, Criminal,* Indictment, Amendment of indictment or complaint.

This court concluded that the statute of limitations set forth in G. L. c. 277, § 63, did not bar the prosecution of the criminal defendant for the crimes of aggravated rape and rape, where a grand jury returned indictments on those charges within the period of the statute of limitations that identified the perpetrator as "John Doe," with a description of race, gender, age, height, and weight, as well as a description of a specific deoxyribonucleic acid (DNA) profile; and where the indictments did not identify the perpetrator by name until after the expiration of the statute of limitations, when the defendant's DNA profile was determined to match the DNA profile contained in each of the indictments, in that the description of "John Doe" in the indictments, which consisted primarily of his genetic identity, comported with the particularity requirement of art. 12 of the Declaration of Rights of the Massachusetts Constitution [451-454], the return of such indictments tolled the applicable statute of limitations [454-455], and amending the indictments to add the defendant's name after the limitations period had lapsed did not violate the defendant's constitutional right to due process and was not contrary to the legislative purpose of the statute of limitations [455-459].

Indictments found and returned in the Superior Court Department on March 15 and July 11, 2006.

A question of law was reported by *Peter M. Lauriat,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Veronica J. White (Alexandria B. Lynn* with her) for the defendant.

*John P. Zanini,* Assistant District Attorney *(Joshua I. Wall,* Assistant District Attorney, with him) for the Commonwealth.

[1]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

*Martha Coakley*, Attorney General, *Pamela L. Hunt*, Assistant Attorney General, *& James J. Arguin*, for the Attorney General & others, amici curiae, submitted a brief.

*Janet Hetherwick Pumphrey*, Committee for Public Counsel Services, *John Reinstein, & Peter S. Krupp*, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.

CORDY, J. A Superior Court judge reported the following question for interlocutory review:[2]

> "Does the statute of limitations set forth in G. L. c. 277, § 63, bar the prosecution of the defendant for the crimes of aggravated rape (G. L. c. 265, § 22 [*a*]), and rape (G. L. c. 265, § 22 [*b*]), where the Suffolk County grand jury returned indictments on these charges within the period of the statute of limitations that identify the perpetrator . . . as 'JOHN DOE (a black male, approximately 16-18 years of age, 6'0" and 160-170 lbs, as of July 13, 1991, and further described by the [deoxyribonucleic acid (DNA)] profile appended to the indictments . . .),' and where the indictments did not identify the perpetrator as Jerry Dixon until after the expiration of the statute of limitations, when his DNA profile was determined to match the DNA profile contained in each of the indictments?"

We conclude that the criminal prosecution of the defendant in this case, Jerry Dixon, is not time barred. In reaching this conclusion, we hold that (1) the description of "John Doe" in the indictment, primarily consisting of his genetic identity, comported with the particularity requirements of art. 12 of the Declaration of Rights of the Massachusetts Constitution; and (2) the return of such an indictment tolled the fifteen-year statute of limitations for aggravated rape and rape as set out in G. L. c. 277,

---

[2]The question was reported pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). The rule provides: "If, prior to trial, or, with the consent of the defendant, after conviction of the defendant, a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein. If the case is reported prior to trial, the case shall be continued for trial to await the decision of the Appeals Court."

§ 63.[3] Accordingly, our answer to the reported question is "No."

1. *Background.*[4] On March 19 and 20, 1991, an unidentified man kidnapped, assaulted, raped, and robbed a woman in Suffolk County while armed. On July 13, 1991, another woman was assaulted and raped in Suffolk County, and the attacker, again, went unidentified.[5] The suspect in each case was described as a black male, sixteen to eighteen years of age, standing approximately six feet tall, and weighing approximately 160 to 170 pounds. Although sexual assault evidence kits, containing vaginal swabs from the victims, were turned over to the Boston police department, tests capable of isolating DNA particles to create a genetic identification sequence were unavailable to it as a forensic tool at that time.[6]

Someone other than the defendant was subsequently indicted for and convicted of committing the March, 1991, attack. In 2004, after serving twelve years in prison, that person was released when testing of the DNA residue (assayed from the vaginal swabs collected after the March, 1991, attack) established

[3]General Laws c. 277, § 63, provides in relevant part: "An indictment for [rape and assault with intent to commit rape], or for conspiracy to commit either of these offenses or as an accessory thereto or any 1 or more of them may be found and filed within 15 years of the date of commission of such offense."

[4]The factual background is drawn from the Superior Court judge's order of report on issues related to the application of the statute of limitations to deoxyribonucleic acid (DNA) profile indictments. See Mass. R. Crim. P. 34.

[5]According to the indictment, the suspect also attempted to rob the woman by threatening her with a knife.

[6]The term DNA is used to describe any molecules of genetic material present in living organisms, whether found in the cellular nucleus (chromosomal DNA) or outside the nucleus in the cytoplasm of a cell (mitochondrial DNA). United States Department of Justice, National Commission on the Future of DNA Evidence, The Future of Forensic DNA Testing: Predictions of the Research and Development Working Group 8-11, 18 (2000) (The Future of Forensic DNA Testing). DNA is sometimes described as a genetic blueprint of an individual's physical characteristics. See United States Department of Justice, National Commission on the Future of DNA Evidence, Postconviction DNA Testing: Recommendations for Handling Requests 21, 105 (1999). With the exception of identical twins, every human being has a wholly unique hereditary composition that is reflected or mapped in its DNA profile. *Id.* A person's DNA composition is uniform throughout the body and does not mutate over time. *Id.* at 21.

that he had not committed the crime.[7] As of 2004, no one had been indicted for the July, 1991, assault and rape.

In the aftermath of the DNA testing that had exonerated the person convicted of the March, 1991, sexual assault, analysts at the Boston police crime laboratory reexamined the physical evidence collected after the March and July attacks. In both cases, the preserved evidence included DNA molecules from which analysts were able to create DNA profiles, identifying the unique genetic composition of the suspects. They were identical, indicating a single perpetrator. The proper name of this suspect, however, remained unknown.

On March 15, 2006, just days before the fifteen-year statute of limitations period imposed for the crime of rape would have lapsed, a grand jury voted to return indictments (collectively, the March 15 indictments) charging the suspect with, among other crimes, aggravated rape in connection with the March, 1991, attack.[8] The indictments identified the perpetrator as "JOHN DOE, (a black male, approximately 16-18 years of age, 6'0" and 160-170 lbs, as of July 13, 1991, and further described by the DNA profile appended to the indictments as Appendix A)."[9] On July 11, 2006, another grand jury voted to return indictments (collectively the July 11 indictments) charging an identically identified individual with aggravated rape in connection with the July, 1991, attack — again, days before expiration of the limitations period.[10]

---

[7]DNA evidence is both unusually and irrefutably probative of identity, and has proved an indispensable tool in our society's quest to reach equipoise between the twin interests of punishing the guilty for their crimes and protecting the innocent from wrongful conviction. See *Commonwealth* v. *Martin,* 447 Mass. 274, 292 (2006) (Cordy, J., dissenting) ("As powerful a tool as DNA evidence was to become in securing convictions of those who were guilty, it was an equally powerful tool for reexamining the convictions of persons who were in fact innocent").

[8]The defendant also was charged with kidnapping, armed robbery, and assault and battery by means of a dangerous weapon. These crimes have different statutes of limitation and are not raised in the reported question.

[9]The DNA profile attached as Appendix A contained the following information: D8S1179 (12,16); D21S11 (28,29); D7S820 (8, 12); CSF1PO (11,12); D3S1358 (15,18); TH01 (7,9); D13S317 (11,13); D16S539 (10,11); vWA (18,21); TPOX (9,9); D18S51 (13,18); AMEL (X,Y); D5S818 (8,11); FGA (21,23).

[10]The defendant also was charged with armed assault with intent to rob, attempt to commit a crime, and rape. See note 8, *supra.*

At some time before July, 2008, Jerry Dixon, while serving a prison sentence for an unrelated crime, provided a DNA sample to the State police crime laboratory as required by G. L. c. 22E, § 3.[11] Analysts generated a DNA profile of Dixon, which was thereafter entered into the Federal Bureau of Investigation's "combined DNA index system" (CODIS).[12] Dixon's DNA profile matched the precise genetic sequence appended to the March 15 and July 11 indictments.[13] On July 14, 2008, the Commonwealth moved successfully to amend both sets of indictments to affix the name "Jerry Dixon," under the authority conferred by G. L. c. 277, § 19.[14]

On January 14, 2009, Dixon filed a motion in the Superior

[11]General Laws c. 22E, § 3, provides, in relevant part: "Any person who is convicted of an offense that is punishable by imprisonment in the state prison . . . shall submit a DNA sample to the department [of State police] within 1 year of such conviction . . . or, if incarcerated, before release from custody, whichever occurs first."

[12]The "combined DNA index system" (CODIS) is the Federal Bureau of Investigation's (FBI's) DNA profile index system that stores DNA records submitted by State and local law enforcement agencies. See G. L. c. 22E, § 1 (defining CODIS). CODIS contains an inventory of all convicted offenders who have provided DNA samples under State or Federal laws, and DNA profiles collected from crime scenes nationwide, and submitted through local CODIS-affiliated laboratories. United States Department of Justice, National Commission on the Future of DNA Evidence, Using DNA to Solve Cold Cases 9 (2002). The databases can be cross-checked for "hits" matching DNA in the inventory of convicted offenders with that collected in the investigation of unsolved crimes. *Id.*

[13]The DNA profile of Jerry Dixon was created by charting the presence of DNA markers at thirteen distinct short tandem repeat (STR) loci. The FBI has chosen these thirteen STR sequences to serve as the uniform loci for all entries in the CODIS database. The Future of Forensic DNA Testing, *supra* at 19-20. When properly generated, the profile created by the STR sequencing procedure has virtually no chance of duplication in the human population, unless the suspect has a genetically identical twin. *Id.* at 19-20. For instance, the probability of a match between profiles of two unrelated persons in a randomly mating population of Caucasian Americans is one in 575 trillion. *Id.* at 19.

[14]General Laws c. 277, § 19, provides: "If the name of an accused person is unknown to the grand jury, he may be described by a fictitious name or by any other practicable description, with an allegation that his real name is unknown. An indictment of the defendant by a fictitious or erroneous name shall not be ground for abatement; but if at any subsequent stage of the proceedings his true name is discovered, it shall be entered on the record and may be used in the subsequent proceedings, with a reference to the fact that he was indicted by the name or description mentioned in the indictment."

Court to dismiss the March 15 and July 11 indictments on grounds that all applicable statute of limitations periods prescribed by G. L. c. 277, § 63, had lapsed. Dixon argued, inter alia, that he was not on notice of his indictment until his proper name had been added, approximately two years after the fifteen-year period for rape expired. As such, he contended that the Commonwealth had circumvented the statutory limitation on criminal proceedings by indicting his DNA sequence as a placeholder until his true identity could be ascertained. On February 17, 2009, a Superior Court judge reported the question presently before us to the Appeals Court for interlocutory review. Because the question was one of first impression and likely to recur, we transferred the reported question to this court on our own motion.[15]

2. *Discussion.* We first address the validity of the indictment under the requirements of art. 12. Next, we determine whether the indictment tolled the statute of limitations as provided in G. L. c. 277, § 63. We conclude by discussing other arguments advanced by the defendant.

a. *Constitutionality of the DNA indictment.* Article 12 ensures that no subject of the Commonwealth "shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." This principle has been viewed as reflecting the law of the land, derived from "ancient immunities and privileges of English liberty," that secures in each individual a privilege against prosecution for high offenses (or infamous crimes) "unless he shall have been previously charged on the presentment or indictment of a grand jury." *Jones* v. *Robbins*, 8 Gray 329, 344-345 (1857), quoting 2 Kent Com. 12 (right to "presentment and indictment of a grand jury, in case of high offences, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions").

---

[15]We acknowledge receipt of two amicus briefs: one submitted by the Attorney General; the district attorneys for the Berkshire, Bristol, Cape and Islands, Eastern, Hampden, Middle, Norfolk, Northern, Northwestern, and Plymouth districts; and the Executive Office of Public Safety and Security; and one submitted by the Committee for Public Counsel Services, the American Civil Liberties Union of Massachusetts, and the Massachusetts Association of Criminal Defense Lawyers.

See *Commonwealth* v. *Holley*, 3 Gray 458, 459 (1855). See also *Connor* v. *Commonwealth*, 363 Mass. 572, 576 (1973) (*Connor*).

The crimes of rape and aggravated rape are offenses requiring indictment. See G. L. c. 263, § 4. Before rendering an indictment, a grand jury must hear sufficient evidence to establish both the identity of the accused and probable cause to arrest him. See *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 531 (1974); *Connor, supra*; *Jones* v. *Robbins, supra* at 344. The defendant does not contend that there was insufficient evidence before the grand jury to establish probable cause that the suspect identified in the DNA profile committed the crimes charged. Rather, he takes issue with the adequacy of his identification in the indictment as the perpetrator.

In *Connor, supra* at 576, we amplified the meaning of the identification requirement, holding that "[i]t is an inescapable conclusion that the indictment must contain words of description which have particular reference to the person whom the Commonwealth seeks to convict." In other words, an indictment must identify the accused with a modicum of "particularity." *Maryland* v. *Garrison*, 480 U.S. 79, 84 & n.8 (1987), and cases cited. See *Connor, supra* at 576-577.

The indictment in *Connor, supra* at 575, was returned against "John Doe, the true name and a more particular description of the said John Doe being to the said Jurors unknown," which we concluded was insufficient to show that the grand jury had found probable cause against the defendant. That is, that the description of the accused in the indictment "expressed no more than the grand jury's intention to accuse a man, otherwise unspecified, of the crime of murder." *Id.* at 578. However, we were also careful to point out that indictments may pass constitutional muster without inclusion of the true or full name of the defendant. *Id.* at 577. See G. L. c. 277, § 19. We declined to establish, by general reference, examples of minimum descriptive content, except to impose a bright-line rule that a John Doe indictment, without any accompanying information, offers neither a "clue to identity" nor the slightest indicia of probable cause and, standing alone, is "synonymous with anonymity." *Id.* at 577-578.

The John Doe indictments in this case, identifying Dixon primarily by his unique DNA profile, are an entirely different

species. Where a general John Doe indictment, bereft of any particularity, must fail as generally anonymous, the converse is true of a DNA indictment: it prevails as precisely eponymous.[16] A properly generated DNA profile is a string of code that exclusively identifies a person's hereditary composition with near infallibility.[17] See National Research Council (NRC), The Evaluation of Forensic DNA Evidence 2 (1996) (technology for DNA profiling has "progressed to the point where the reliability and validity of properly collected and analyzed DNA data should not be in doubt"). Unlike the general John Doe indictment in *Connor, supra* at 575, which merely expressed a grand jury's intention to accuse "anyone," *id.* at 578, an indictment of a person identified by a DNA profile accuses a singular and ascertained, but simply unnamed individual. Probably more than proper names or physical characteristics, DNA profiles unassailably fulfil the constitutional requirement that an indictment provide "words of description which have particular reference to the person whom the Commonwealth seeks to convict." *Connor, supra* at 576. See NRC, The Evaluation of Forensic DNA Evidence, *supra* at 9 ("If the array of DNA markers used for comparison is large enough, the chance that two different persons will share all of them becomes vanishingly small"). A DNA profile is not merely a word "of description," *Connor, supra* at 576; it is, metaphorically, an indelible "bar code" that labels an individual's identity with nearly irrefutable precision. See NRC, The Evaluation of Forensic DNA Evidence, *supra* at 2, 7, 9. See

[16]In this case, we review an indictment that not only incorporated reference to a DNA profile, but also included accompanying physical descriptive content. While we indorse the practice of incorporating DNA profiles in an indictment, where a proper name remains unknown, we leave unanswered the question whether an indictment naming only a DNA profile, without more, comports with the particularity requirement of art. 12 of the Declaration of Rights of the Massachusetts Constitution. See *Connor v. Commonwealth*, 363 Mass. 572, 576-578 (1973) (*Connor*). We echo the instructive language of the Wisconsin Court of Appeals, which in reviewing a highly similar set of facts, stated that, "although the DNA profile satisfies the particularity requirements in identifying a suspect whose name is not known, it would be helpful, for notice purposes, to also include any physical appearance characteristics." *State* v. *Dabney*, 264 Wis. 2d 843, 854 (Ct. App. 2003).

[17]The DNA profile in this case was an individualized, statistically valid thirteen-loci DNA profile prepared for the CODIS database. See note 13, *supra*.

also *People* v. *Robinson*, 47 Cal. 4th 1104, 1133-1135, cert. denied, 131 S. Ct. 72 (2010) (*Robinson*).

In sum, the March 15 and July 11 indictments incorporating Dixon's unique DNA profile, and bolstered by age, height, weight, and race descriptions, comport with art. 12 and, in this respect, were valid when rendered by the grand juries. *Connor*, *supra* at 576-578.[18]

b. *Statute of limitations.* Having determined that the indictments describing Dixon primarily by his DNA profile were consonant with art. 12, we conclude that their return, within fifteen years of the crimes, met the requirements of the statute of limitations.

General Laws c. 277, § 63, provides that "[a]n indictment" for rape "may be found and filed within 15 years of the date of commission of such offense."[19] The plain language of the statute creates an elementary legal formula: once an indictment has been "found and filed" within the statutory period of fifteen

_____

[18]In holding as we do, we are in accord with several other jurisdictions that have upheld the validity of accusatory documents that name a unique DNA profile. See *People* v. *Robinson*, 47 Cal. 4th 1104, 1133-1135, cert. denied, 131 S. Ct. 72 (2010) (arrest warrant for thirteen-loci DNA profile, which also offered explanation that profile had random match probability essentially incapable of duplication in human population, complied with particularity requirements of Fourth Amendment to United States Constitution and California Constitution); *State* v. *Belt*, 285 Kan. 949, 960-962 (2008) (expressing agreement "in the abstract" with proposition that warrant identifying person to be arrested for sexual offense by person's unique DNA profile can satisfy constitutional and statutory particularity requirements, but affirming dismissal where warrant and supporting affidavits did not incorporate unique DNA sequence but rather DNA loci common to all people); *People* v. *Martinez*, 52 A.D.3d 68, 73 (N.Y. 2008) (especially in light of prevalence of DNA data banks as criminal justice tools, "DNA indictment is an appropriate method to prosecute perpetrators of some of the most heinous criminal acts"); *State* v. *Dabney*, *supra* at 853, 854, quoting *Scheer* v. *Keown*, 29 Wis. 586, 588 (1872) (when name is unknown, complaint or warrant may issue if referencing "best description of the person prosecuted" and noting that "for purposes of identifying 'a particular person' as the defendant, a DNA profile is arguably the most discrete, exclusive means of personal identification possible").

[19]Further, "[a]ny period during which the defendant is not usually and publicly a resident within the commonwealth shall be excluded in determining the time limited." G. L. c. 277, § 63. It is uncontroverted that Jerry Dixon remained "usually and publicly a resident" of the Commonwealth during the years at issue.

years, the statute of limitations is tolled.[20] See *Commonwealth* v. *Shanley*, 455 Mass. 752, 778-782 (2010); *Commonwealth* v. *Geagan*, 339 Mass. 487, 490-491, 518-519, cert. denied, 361 U.S. 895 (1959) (indictments returned on January 13 and 16, 1956, for crimes committed on January 17, 1950; six-year statute of limitations satisfied). An indictment is found when voted on favorably by twelve or more grand jurors, and filed when returned to a judge in open court. See Mass. R. Crim. P. 5 (e), as appearing in 442 Mass. 1505 (2004). There being no dispute that the indictments were voted on and returned within the period prescribed by G. L. c. 277, § 63, the statute of limitations does not bar their prosecution. See *Commonwealth* v. *Rahim*, 441 Mass. 273, 274 (2004), quoting *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973) ("Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words").

c. *Due process and statutory purpose.* Dixon's principal argument is that while a DNA indictment may adequately identify a defendant, it does not give him notice of the charges pending against him, and, therefore, amending the indictment to add his name after the limitations period has lapsed violates his right to due process guaranteed by art. 12 and is contrary to the legislative purpose of G. L. c. 277, § 63. We disagree.

As a threshold matter, G. L. c. 277, § 63, is a statutory creation and affords no positive rights of constitutional dimension. See *United States* v *Marion*, 404 U.S. 307, 322 (1971) (statutes of limitations reflect "legislative assessments"). The Legislature could abandon G. L. c. 277, § 63, entirely if it saw fit to do so.[21]

---

[20]The statute only references an indictment being "found and filed," but it equally applies to the issuance of a criminal complaint. *Commonwealth* v. *Northern Telecom, Inc.*, 25 Mass. App. Ct. 255, 257 (1988), citing G. L. c. 277, § 63.

[21]The Legislature has declined to enact a statute of limitations for murder. Moreover, G. L. c. 277, § 63, tolls the statute where a minor child is the victim, or the defendant is outside the jurisdiction. The failure of the Commonwealth to secure an indictment within the statutory period is not, itself, a bar to prosecution. Rather, noncompliance with the statute of limitations is an affirmative defense that the defendant must plead, and if the defense is not properly raised, it is waived. See *Commonwealth* v. *Barrett*, 418 Mass. 788, 792 (1994); *Commonwealth* v. *Steinberg*, 404 Mass. 602, 606 (1989); *Couture* v. *Commonwealth*, 338 Mass. 31, 33 (1958).

However salutary its purposes, the statute is not a source of constitutional liberties, nor does it by its own terms require actual or constructive notice to a defendant in order to be satisfied. Its requirements are simply that a valid indictment be "found and filed." Those requirements have been met.

Of course, our Declaration of Rights extends robust due process rights to persons charged with crimes, of which fair notice of the charges is a touchstone. Article 12 provides: "No subject shall be held to answer for any Crimes or offence, until the same is fully and plainly, substantially and formally, described to him . . . ."[22] However, that right traditionally attaches at an arraignment before a neutral magistrate. Indeed, the arraignment is the judicial system's formal mechanism for providing the constitutionally prescribed description of criminal charges. *Rothgery* v. *Gillespie County*, 554 U.S. 191, 198-199 (2008), quoting 1 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 1.4(g) (3d ed. 2007) (arraignment "is generally the hearing at which 'the magistrate informs the defendant of the charge in the complaint, and of various rights in further proceedings' "). See G. L. c. 277, § 47A (after interposition of plea of not guilty at arraignment, defendant may attack sufficiency of indictment any time before trial).

We have not previously held that the constitutional requirement of notice must be given at any particular point following the return of an indictment. Cf. *Robinson, supra* at 1137 n.30 (California law does not require that defendant "have notice, within the limitations period, that prosecution has commenced"). Indeed, our long-standing rules of criminal procedure counsel otherwise, and we have never perceived any conflict with art. 12. See G. L. c. 277, § 34 (barring dismissal where indictment enables defendant to understand charge and prepare defense, even if it lacks description or information "which might be obtained by requiring a bill of particulars"); Mass. R. Crim. P. 13 (b), as appearing in 442 Mass 1516 (2004) (granting trial judge discretion, sua sponte or on defendant's motion, to order that prosecution file bill of particulars "as may be necessary to

---

[22]The Sixth Amendment to the United States Constitution also provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

give both the defendant and the court *reasonable notice* of the crime charged" [emphasis supplied]); Mass. R. Crim. P. 5 (d), as appearing in 442 Mass. 1505 (2004) (permitting return of sealed indictment, concealing, under penalty of law, all information from defendant until execution of arrest warrant).

Moreover, while we have concluded that generic John Doe indictments are not permitted by art. 12, the Legislature has expressly vested in the Commonwealth the authority to indict by "a fictitious name or by any other practicable description." G. L. c. 277, § 19. Such authority, we have said, "is salutary, to the end that, in so far as art. 12 of the [Massachusetts Declaration of Rights] permits, one who ought to be indicted is prevented from hampering the grand jury in the performance of their duty by screening his name and other identifying characteristics."[23] *Connor, supra* at 577.

The Commonwealth routinely perfects its constitutionally required notice to the defendant, as required by art. 12, after the issuance date of indictment. It logically follows that where the Commonwealth secures an otherwise valid and timely indictment but inserts the defendant's proper name in the record outside the relevant limitation period, there is no constitutional or statutory infirmity. The notice provision of art. 12 carries no time limitation anchored to the statute of limitations, and G. L. c. 277, § 63, carries no notice requirement at all.

---

[23]On learning the defendant's proper name, the Commonwealth is instructed by G. L. c. 277, § 19, to enter it into the record in an already commenced criminal proceeding. Here, the Commonwealth formally amended the indictment pursuant to Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979), to include Dixon's proper name before his arrest and arraignment. Dixon argues that the statute of limitations continued accruing until that date of amendment, when he was actually or constructively given notice of the charges. For all the reasons discussed above, this argument fails. We note additionally that the practice of amending an indictment to include a defendant's later-discovered proper name, while perhaps precatory, is wholly permissive. G. L. c. 277, § 19. In this case, the Commonwealth could have proceeded to trial without formal amendment of the indictment, and merely entered the name "Jerry Dixon" in the record. *Id.* Dixon's argument defies logic that this permissive amendment of the indictment could somehow resuscitate the statute of limitations period that had already tolled when the valid, but nameless, indictment was "found and filed." The argument is all the more baseless because the original indictment plainly effectuated the purpose of G. L. c. 277, § 19, of preventing frustration of an indictment due to the anonymity of a defendant. *Connor, supra* at 577.

We are not unmindful of the arguments of the defendant and others that DNA indictments may vitiate some of the important public policy purposes that our statutes of limitations serve. See Ulmer, Using DNA Profiles to Obtain "John Doe" Arrest Warrants and Indictments, 58 Wash. & Lee L. Rev. 1585, 1616-1618 (2001); Comment, Beyond Fingerprinting: Indicting DNA Threatens Criminal Defendants' Constitutional and Statutory Rights, 50 Am. U. L. Rev. 979, 998 (2001). We have acknowledged that the object of our statutes of limitations and repose is "to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnesses." *Joslyn* v. *Chang*, 445 Mass. 344, 351 (2005), quoting *Spring* v. *Gray*, 22 F. Cas. 978, 984-985 (C.C.D. Me. 1830), aff'd, 31 U.S. (6 Pet.) 151 (1832). The defendant argues that our holding today could have the perverse effect of initiating criminal trials, in cases where a DNA sample can be indicted as a placeholder, decades and decades after commission of the offense. He argues that it is manifestly unfair to try a defendant on the basis of a long-preserved DNA sample, probative of no more than identity, where spoilation of all other evidence and evaporation of witness recollection prejudices his right to a fair trial. That scenario is not before us today.

In the event of an especially delayed trial, the defendant has other available remedies beyond challenging the sufficiency of the indictment. With respect to preindictment delays, the principles of due process inherent in the Fifth Amendment to the United States Constitution and art. 12 safeguard putative defendants when those delays are intentional and prejudicial. See *United States* v. *Lovasco*, 431 U.S. 783, 789 (1977) (holding "Due Process Clause has a limited role to play in protecting against oppressive delay"); *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 86 (1989), quoting *Commonwealth* v. *Best*, 381 Mass. 472, 484 (1980) (requiring defendant to show prosecutorial delay is prejudicial to defense and "has been intentionally undertaken to gain a tactical advantage over the accused or has been incurred in reckless disregard of known risks to the putative defendant's ability to mount a defense"). Postaccusation,

the speedy trial guarantees found in the Sixth Amendment to the United States Constitution, art. 11 of the Massachusetts Declaration of Rights, and State procedural rules similarly proscribe unfairly lengthy delays. See *Klopfer* v. *North Carolina*, 386 U.S. 213, 222-223 (1967) (incorporating Sixth Amendment's speedy trial protection to States through Fourteenth Amendment to United States Constitution). We have held that the speedy trial provision in art. 11 is coextensive with the Sixth Amendment.[24] *Commonwealth* v. *Gove*, 366 Mass. 351, 356 n.6 (1974). As such, the guaranty attaches at the time formal charges are brought. *Id.* at 357, quoting *United States* v. *Marion*, 404 U.S. 307, 320 (1971). In addition to constitutional protections, under our rules of criminal procedure, a defendant is entitled to dismissal of an indictment if dilatory "conduct on the part of the prosecuting attorney has resulted in prejudice." Mass. R. Crim. P. 36 (c), 378 Mass. 909 (1979).[25]

It is in the first instance for the Legislature to determine whether these safeguards, albeit limited in nature and rare in application, are inadequate to protect putative defendants indicted by their genetic identity, but unable to be identified by name before the expiration of G. L. c. 277, § 63. If so, they may revisit the statutory scheme that we conclude permits the practice.[26]

---

[24]On a motion for dismissal on speedy trial grounds, a court considers four conjunctive factors: " '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant' [that] must interact in a 'difficult and sensitive balancing process.' " *Commonwealth* v. *Gove*, 366 Mass. 351, 361 (1974), quoting *Barker* v. *Wingo*, 407 U.S. 514, 530, 533 (1972). The burden is on the defendant to demonstrate prejudicial delay sufficient to warrant dismissal. *Commonwealth* v. *Gove, supra.*

[25]As may be the case in indictments brought against persons identified by their genetic profile, there is the potential for delay between the date of indictment and the date on which the profile is identified as belonging to the accused, as well as between the date of identification and the date of arrest. In this case, the former period was approximately two years (2006-2008), and the latter of very short duration. Neither delay rises to the level of prejudice that would warrant dismissal.

[26]Other States have sought to balance the utility of a DNA indictment against the unfairness to putative defendants. See, e.g., Del. Code Ann. tit. 11, § 3107(a) (Michie 2007) (allowing indictment by DNA profile to satisfy applicable statutes of limitation); Iowa Code Ann. § 802.2 (West Supp. 2010) (if sexual abuse suspect is identified through use of DNA profile, State may seek information or indictment within three years from date person is identified

3. *Conclusion.* For the reasons expressed, our answer to the reported question is "No." The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

if ten-year statute of limitations has expired); 720 Ill. Comp. Stat. 5/3-5(a)(2) (West 2009) (when DNA profile is entered into database within ten years of commission of offense, and identity of offender is unknown after diligent investigation, statute of limitations permanently tolled). See generally Note, An Appropriate Balance? — A Survey and Critique of State and Federal DNA Indictment and Tolling Statutes, 6 J. High Tech. L. 213 (2006).