Sᴛᴀᴛᴇ of Wisconsin, Plaintiff-Respondent,

v.

Bobby R. Dᴀʙɴᴇʏ, Defendant-Appellant.†

Court of Appeals

*No. 02–2445–CR. Submitted on briefs March 4, 2003.—Decided April 29, 2003.*

2003 WI App 108

(Also reported in 663 N.W.2d 366.)

† Petition to review denied 10-1-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lynn E. Hackbarth* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general by *James M. Freimuth*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.   Bobby R. Dabney appeals from a judgment entered after a trial to the court where he was found guilty of kidnapping and two counts of first-degree sexual assault while using a dangerous weapon, contrary to WIS. STAT. §§ 940.31(1)(a), 940.225(1)(b) and 939.63 (2001–02).[1] Dabney contends that the complaint and arrest warrant in this case, which initially only identified him by his DNA profile, were insufficient to confer personal jurisdiction. He further claims that the amended complaint, which identified him by name, was untimely and barred by the statute of limitations. Finally, he asserts that his due process rights were violated based on the six-year-plus delay between the criminal act and the prosecution in this case. Because the complaint and arrest warrant were sufficient to confer personal jurisdiction, because the case was commenced before the statute of limitations expired, and because Dabney has failed to demonstrate that his due process rights were violated by any delay, we affirm.

## I. BACKGROUND

¶ 2.   On December 7, 1994, an unknown male accosted fifteen-year-old Dawana F. at a bus stop in Milwaukee. He forced her at gunpoint to a nearby lot. There, he tied her hands behind her back, covered her

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

eyes and led her to a car. He pushed her into the car, drove a short distance, and stopped. He then fondled her breasts and forced her to perform fellatio on him, promising not to kill her if she "did that good." The unknown male ejaculated in her mouth. He then drove again for a short time and the sequence was repeated. Finally, the man let Dawana out of the car. She found her mother and called the police.

¶ 3.   Dawana was taken immediately to a sexual assault treatment center where "oral swabs and saliva samples," as well as a "blood standard," were obtained from her. The state crime lab found semen present in the saliva and developed a DNA profile for the unknown male suspect.

¶ 4.   On December 4, 2000, the State charged John Doe #12 with kidnapping and four counts of first-degree sexual assault. The DNA profile was included in the caption of the complaint. On that same day, a trial court found probable cause in the complaint and issued an arrest warrant for John Doe #12.

¶ 5.   On March 14, 2001, the State filed an amended complaint substituting Dabney's name for "John Doe." The amended complaint stated that the DNA profile had been run against the databank on December 18, 2000, without finding a match; however, on February 27, 2001, a match was found. This was reconfirmed on March 7, 2001.

¶ 6.   On April 12, 2001, Dabney was bound over for trial and an information was filed, setting forth five counts:   kidnapping, and four counts of first-degree sexual assault (two hand-to-breast and two mouth-to-penis). In June of 2001, Dabney moved to dismiss the charges, alleging that the original complaint and arrest warrant, based solely on his DNA profile, were insufficient and should not toll the six-year statute of limita-

849

tions, which otherwise would have expired on December 7, 2000. He also argued that the State's delay in commencing this prosecution violated his right to due process. The trial court denied his motion to dismiss orally in July of 2001, followed by a written decision in August of 2001.

¶ 7.   On September 13, 2001, Dabney filed a petition for leave to appeal to this court, which was denied. The supreme court also denied Dabney's request for pretrial review in this case. As a result, the case was tried to the court on February 6, 2002. Dabney waived his right to a jury trial, and agreed to have the case presented by stipulated facts. Because Dabney agreed that the victim, Dawana, did not need to testify in person, the State dismissed the two counts of sexual assault that alleged hand-to-breast contact. Dabney was found guilty on the three remaining counts. He was sentenced to three consecutive forty-year prison terms. Judgment was entered. He now appeals.

## II. DISCUSSION

*A. DNA Complaint & Statute of Limitations.*

¶ 8.   Dabney contends that the original complaint and the arrest warrant, which were filed/issued three days before the expiration of the six-year statute of limitations, did not satisfy the "reasonable certainty" identification requirements of WIS. STAT. § 968.04(3)(a)4, thereby depriving the court of personal jurisdiction over him. He also argues that because the original complaint was insufficient, and the warrant was not timely issued, the six-year statute of limitations passed, and therefore bars this prosecution. We reject both arguments for the reasons that follow.

¶ 9. Whether a criminal prosecution is properly and timely commenced by a "John Doe" complaint and arrest warrant which identify the defendant solely by a DNA profile, is an issue of first impression in this state. The issue presented requires an interpretation of statutes and, thus, is a question of law for this court. *State v. Adams*, 152 Wis. 2d 68, 73–74, 447 N.W.2d 90 (Ct. App. 1989).

¶ 10. Dabney contends that the original complaint and arrest warrant were insufficient to confer personal jurisdiction. Personal jurisdiction in criminal cases involves the power of the circuit court over the physical person of the defendant. *See, e.g., Walberg v. State*, 73 Wis. 2d 448, 457–58, 243 N.W.2d 190 (1976). The circuit court obtains personal jurisdiction when two requirements are satisfied: (1) a complaint or an indictment must be filed stating probable cause to believe a crime has been committed and that the defendant probably committed it, *see State v. Smith*, 131 Wis. 2d 220, 238, 388 N.W.2d 601 (1986); and (2) there must be compliance with the applicable statute of limitations, *see State v. Pohlhammer*, 78 Wis. 2d 516, 523, 254 N.W.2d 478 (1977). To satisfy the statute of limitations, an action must be commenced before the statute expires. In a criminal prosecution, an action is "commenced" "when a warrant or summons is issued, an indictment is found, or an information is filed." Wis. Stat. § 939.74(1); *see also State v. Jennings*, 2003 WI 10, ¶ 1, 259 Wis. 2d 523, 657 N.W.2d 393 (a complaint is sufficient to commence an action if the defendant is already in custody due to incarceration).

¶ 11. Here, a complaint and arrest warrant were both issued on December 4, 2000, three days before the

851

six-year statute of limitations expired. Dabney does not dispute this fact. He argues, however, that because the complaint and arrest warrant identified him solely by his DNA profile, the "reasonable certainty" requirement of Wis. Stat. § 968.04(3)(a)4 was not satisfied. Section 968.04(3)(a)4 provides in pertinent part that the arrest warrant shall: "State the name of the person to be arrested, if known, or if not known, designate the person to be arrested by any description by which the person to be arrested can be identified with reasonable certainty."

¶ 12.   Although Dabney repeatedly argues that the "reasonable certainty" requirement applies to both the complaint and the arrest warrant, that is not the case. The "reasonable certainty" requirement is specific to the warrant only. The statutory requirements for a complaint require only that the complaint set forth "a written statement of the essential facts constituting the offense charged." Wis. Stat. § 968.01(2). Moreover, case law consistently provides that a complaint must meet certain requirements to be sufficient:

> A criminal complaint is a self-contained charge that must set forth facts within its four corners that are sufficient, in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and the defendant is probably culpable . . . . To be sufficient, a complaint must only be minimally adequate. This is to be evaluated in a common sense rather than a hypertechnical manner, in setting forth the essential facts establishing probable cause.

*Adams*, 152 Wis. 2d at 73. The complaint must answer who is being charged and why. *Id.* at 73–74. Thus, we interpret Dabney's argument with respect to the com-

852

plaint to suggest that the DNA profile fails to answer the question of who is being charged. Accordingly, in addressing this issue, we refer to both the complaint and the arrest warrant.

■

¶ 13. The question to be addressed is whether a complaint and an arrest warrant, which identify the defendant/suspect as "John Doe" with a specific DNA profile, satisfies the particularity and reasonable certainty requirements. Our supreme court considered a similar issue more than a century ago in a case where an unknown female was accused of larceny. *See Scheer v. Keown*, 29 Wis. 586, 588 (1872). In *Scheer*, the court held: "[T]he fact that her name was unknown should have been stated in the complaint and warrant, and the best description of the person prosecuted, which the nature of the case would allow, should have been given therein[.]" *Id.* Thus, the particularity or reasonable certainty requirements do not absolutely require that a person's name appear in the complaint or warrant. When the name is unknown, the person may be identified with "the best description" available.

¶ 14. One treatise writer advises that a "John Doe" arrest warrant satisfies the particularity requirement if it describes the person's "occupation, his personal appearance, peculiarities, place or residence or other means of identification." 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 5.1(g) (3d ed. 1996 & Supp. 2003) (footnote citations omitted). The case law suggests that the complaint and warrant satisfy the sufficiency standard when the description clearly demonstrates that the "law enforcement authorities had probable cause to suspect a particular person of committing a crime." *Powe v. City of Chicago*, 664 F.2d 639, 646 (7th Cir. 1981).

¶ 15. Here, the complaint and arrest warrant identified the suspect as "John Doe" and set forth a specific DNA profile. We conclude that for purposes of identifying "a particular person" as the defendant, a DNA profile is arguably the most discrete, exclusive means of personal identification possible. "A genetic code describes a person with far greater precision than a physical description or a name." Meredith A. Bieber, Comment, *Meeting the Statute or Beating It: Using "John Doe" Indictments Based on DNA to Meet the Statute of Limitations*, 150 U. Pa. L. Rev. 1079, 1085 (2002). Thus, we agree with the State's arguments that the DNA profile satisfies the "reasonable certainty" requirements for an arrest warrant and answers the "who is charged" question for a complaint.

¶ 16. We are, however, persuaded by Dabney's suggestion that in addition to the DNA profile, the particular physical characteristics known to police would have further enhanced the completeness of the complaint and warrant. As Dabney points out, an individual would not necessarily recognize the DNA profile as his own. Thus, although the DNA profile satisfies the particularity requirements in identifying a suspect whose name is not known, it would be helpful, for notice purposes, to also include any known physical appearance characteristics. The lack of a more particular physical description in this case, however, does not defeat the State's argument.

¶ 17. Dabney also contends that because a DNA profile is not apparent to the naked eye, the warrant cannot be readily executed. This argument does not alter our conclusion that the particularity requirement was satisfied in this case. Clearly, a police officer with a

DNA profile in hand could not walk up to an individual and arrest him/her on that basis. Rather, the officer would need to obtain a DNA sample from the individual to compare it with the one identified in the arrest warrant. This extra step, however, is not unique to a warrant based on DNA. No matter how well a warrant describes the individual, extrinsic information is commonly needed to execute it. If a name is given, information to link the name to the physical person must be acquired. Accordingly, we conclude that an arrest warrant based on a DNA profile can be readily and accurately executed.

¶ 18.   Based on the foregoing, we conclude that the complaint and warrant in this case satisfy the statutory requirements; therefore, the documents were sufficient to identify Dabney and were sufficient to confer personal jurisdiction. Accordingly, the trial court did not err when it denied Dabney's motion to dismiss based on this argument.

## B. Statute of Limitations.

¶ 19.   Next, Dabney argues that a complaint/warrant based solely on a DNA profile should be deemed insufficient to satisfy the statute of limitations. He contends that in relying on this type of complaint/warrant, the state is effectively eliminating the statute of limitations because a DNA complaint/warrant could be issued just before the statute of limitations passed in order to toll the action forever. We reject this contention.

¶ 20.   In this case, the relevant statute of limitations is Wis. Stat. § 939.74(1), which provides that a prosecution for a felony "must be commenced within 6

years" after its commission. A prosecution is commenced when a warrant or summons is issued, an indictment is found, or an information is filed. *But see Jennings*, 259 Wis. 2d 523, ¶ 1 (complaint sufficient to commence action when defendant is already in custody due to incarceration).

¶ 21.   Here, it is undisputed that the DNA profile complaint and warrant were issued three days before the statute of limitations expired. We have already concluded that the complaint and warrant in this case were sufficient to commence the prosecution. Thus, the case was timely filed. Nonetheless, we address briefly, Dabney's contentions that the State's actions in this case effectively nullify the statute of limitations.

¶ 22.   First, we note that the protection afforded by the statute of limitations "is not a fundamental right" of a criminal defendant. *State v. Sher*, 149 Wis. 2d 1, 13, 437 N.W.2d 878 (1989). Rather, it is a statutorily created right, whose primary purpose is to "protect the accused from having to defend himself against charges of remote misconduct." *John v. State*, 96 Wis. 2d 183, 194, 291 N.W.2d 502 (1980).

¶ 23.   That purpose has not been violated here. The charged crimes were committed December 7, 1994, and the arrest warrant was issued on December 4, 2000. This was less than six years after the crimes. The legislature has determined that six years is not so "remote" as to negatively prejudice the defendant's rights.

¶ 24.   Second, the legislature has addressed this issue and passed legislation addressing these concerns. Newly enacted Wis. Stat. § 939.74(2d) provides:

> **(2d)**(a) In this subsection, "deoxyribonucleic acid profile" means an individual's patterned chemical struc-

ture of genetic information identified by analyzing biological material that contains the individual's deoxyribonucleic acid ["DNA"].

(b) If before the time limitation under sub. (1) expired [the six-year period for felonies], the state collected biological material that is evidence of the identity of the person who committed a violation of s. 940.225 (1) or (2), the state identified a [DNA] profile from the biological material, and comparisons of that [DNA] profile to [DNA] profiles of known persons did not result in a probable identification of the person who is the source of the biological material, the state may commence prosecution of the person who is the source of the biological material for violation of s. 940.225 (1) or (2) within 12 months after comparison of the [DNA] profile relating to the violation results in a probable identification of the person.

¶ 25. Although this statute did not apply to Dabney's case, it provides support for the State's position. The newly enacted statute demonstrates the legislature's recognition that DNA profiles do sufficiently identify sexual-assault offenders and that the competing interest in sexual-assault prosecutions weigh in favor of allowing such prosecutions to commence *after* six years when the state has obtained the offender's DNA profile but has been unable to match it to a known DNA profile within that period. The legislature essentially has created a "discovery rule" extension of the statute of limitations in these limited circumstances. Thus, the statute of limitations is not extended *forever;* rather, the statute is tolled under certain circumstances until a match is discovered. Once a match is discovered, the statute places a twelve-month deadline upon the state in which the action must be commenced.

¶ 26. Based on the foregoing, we must reject Dabney's statute of limitations argument. We conclude that under the facts and circumstances presented in this case, the State commenced this action in a timely manner. Our conclusion is supported by the legislature's recent enactment of WIS. STAT. § 939.74(2d)(b).

*C. Due Process.*

¶ 27. Dabney's last claim is that his due process rights were violated for two reasons: (1) he was not given sufficient notice of the claim because the original complaint and warrant identified him only by his DNA profile; and (2) he was prejudiced by the pre-charging delay. We reject both arguments.

¶ 28. First, the fact that the original complaint and arrest warrant were issued as "John Doe" and contained only a DNA profile does not create any lack of "notice" issues. A defendant is not entitled to specific notice that the state is issuing a complaint and seeking an arrest warrant. "[A]n arrest warrant issues when it is signed by a judge with intent that it be executed and the warrant leaves the possession of the judge." *State v. Mueller*, 201 Wis. 2d 121, 129, 549 N.W.2d 455 (Ct. App. 1996). Thus, the warrant is issued without any involvement from the defendant and the defendant is not provided with any notice of the underlying charge until the warrant is executed. Here, the warrant was not executed until Dabney's name was substituted for "John Doe." Thus, whether or not Dabney knew his specific DNA profile is irrelevant.

¶ 29. Second, Dabney contends that the prosecutorial delay in filing the complaint violated his due process rights. He argues that the State intentionally delayed this case until it was able to obtain a positive DNA identification. He contends that, as a result, he has been prejudiced because "memories fade" and "witnesses become unavailable." We must reject this claim as well.

¶ 30. In order to demonstrate a due process violation on this basis, Dabney has to establish that he suffered: (1) actual prejudice as a result of the delay; and (2) that the delay arose as a result of an improper purpose, so as to afford the State a tactical advantage over him. *State v. Wilson*, 149 Wis. 2d 878, 903–05, 440 N.W.2d 534 (1989). Whether the pre-charging delay violated the due process clause is a constitutional question, which we review independent of the trial court. *See generally State v. McMorris*, 213 Wis. 2d 156, 165–66, 570 N.W.2d 384 (1997).

¶ 31. Dabney has failed to satisfy his burden. Although he alleges that "memories fade" and "witnesses become unavailable" as time passes, he does not set forth any specific facts to establish *actual prejudice*. Without any more specific factual allegations, he has failed to sufficiently present a claim of actual prejudice. *See State v. Monarch*, 230 Wis. 2d 542, 551, 602 N.W.2d 179 (Ct. App. 1999). Rather, he relies primarily on his claim that the statute of limitations expired and, therefore, prejudice is "irrebuttably presumed." We disagree based on our earlier conclusion that the statute of limitations was not violated in this case.

¶ 32. The primary evidence against Dabney was the DNA sample he left in the victim's mouth and the victim's statement. He offered no challenge to the DNA

evidence and no evidence challenging the victim's version of events. Based on the foregoing, we are not persuaded by his conclusory assertions of actual prejudice.

¶ 33. Moreover, he also fails to establish that the delay in filing the complaint resulted from an improper prosecutorial motive or purpose. He made no showing as to how the timing of the complaint created a tactical advantage for the State. He argues only that the DNA profile could have been run and discovered earlier. The State refutes this allegation, pointing out that the original complaint states that the DNA sample was tested earlier, but no match was found. Regardless, there is no evidence that the State intentionally delayed the prosecution of this case in order to obtain a tactical advantage over Dabney.

*By the Court.*—Judgment affirmed.