# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 4, 2012 Session

## STATE OF TENNESSEE v. ROBERT JASON BURDICK

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2008B1350      Seth W. Norman, Judge**

---

**No. M2010-00144-SC-R11-CD - Filed December 18, 2012**

---

In 2000, an affidavit of complaint was issued charging "John Doe" with an aggravated rape that had occurred in 1994. The affidavit, which included a detailed DNA profile of "John Doe," led to the issuance of an arrest warrant. In 2008, police officers discovered that fingerprints taken from the scene of the crime matched those of the defendant. Later, police determined that the DNA profile was that of the defendant, and a superseding indictment was issued in his name. The defendant was tried and convicted of attempted aggravated rape, and the trial court imposed a ten-year sentence. The Court of Criminal Appeals affirmed, holding that the "John Doe" warrant with the DNA profile was adequate to identify the defendant and commence prosecution within the applicable statute of limitations. Because the issue is one of first impression in this state, this Court granted an application for permission to appeal. We hold that a criminal prosecution is commenced if, within the statute of limitations for a particular offense, a warrant is issued identifying the defendant by gender and his or her unique DNA profile. Furthermore, a superseding indictment in the defendant's proper name provides the requisite notice of the charge. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

John E. Herbison, Clarksville, Tennessee, for the appellant, Robert Jason Burdick.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Rachel E. Willis, Senior Counsel; Mark A. Fulks, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

On the evening of February 28, 1994, P. Y. (the "victim"),[1] a female attorney in Nashville, Tennessee, returned to her residence after work. At approximately 8:30 p.m., she fell asleep. She was awakened by a telephone call at 10:00 p.m., but soon went back to sleep while lying on her stomach. Before daylight on the next morning, she was awakened by something touching her on her neck and shoulders. Initially believing it to be one of her cats, she tried to shove it away, but when she turned her head, she saw the face of a man by the light of a lamp in her room. Her assailant sprawled across her body, pinning her down onto her stomach. She screamed, "No," and, as she reached backward with her right hand, she discovered that the assailant was wearing a stocking over his face. When her assailant inflicted a staggering blow to the side of her head, the victim again reached backward and felt her assailant's naked thigh. She bit his hand as she resisted the attack. He struck her again, ordered her to put her hands over the back of her head, and displayed a piece of nylon cord. Fearing that he would try to tie her, the victim continued to struggle for several more minutes. Each time her assailant attempted to reach underneath her, she bit his hand. He retaliated by striking her in the head, as many as fifteen to twenty-five times during the course of the assault.

At some point, the victim and her assailant fell to the floor. Afterward, when the victim realized that she had bitten off a piece of skin from his finger, she pulled it from her teeth and placed it under the bed. The assailant continued his attack, pressing his hand toward her vaginal area. The victim continued to resist, begging him to stop. Eventually, the assailant discontinued his attack, forced the victim into her bathroom, ordered her to stay inside for five minutes, and left the residence. After several moments, the victim returned to her bedroom, took her handgun from a bedside table, and called 911.

Upon arriving at the scene, officers with the Metropolitan Nashville and Davidson County Police Department dispatched a K-9 unit but were unable to track the assailant. The officers discovered an open window in the garage and a torn window screen in the yard. The officers took possession of the piece of skin the victim had bitten off from the finger of her assailant. A partial fingerprint was developed from the skin, and a palm print was lifted from the garage window sill. Neither that fingerprint nor the palm print produced a match in the databases available to police at that time. A deoxyribonucleic acid ("DNA") profile also was developed from the skin, but no match was found in the Combined DNA Index System

---

[1] It is the policy of this Court to identify sexual assault victims by their initials.

("CODIS") database.[2]

On February 2, 2000, almost six years after the attack,[3] Police Officer Rita Brockmann Baker filed an affidavit of complaint in the Davidson County General Sessions Court. The affidavit contained allegations that a "John Doe" had committed aggravated rape in violation of Tennessee Code Annotated section 39-13-502 (1991) and included the following assertions:

> On March 1, 1994, [the victim] was in her residence . . . . At approximately 0350 to 0400 hours, she was awakened in her bed by John Doe defendant on top of her. Defendant repeatedly beat her. [The victim] struggled against his attack. Defendant tried unsuccessfully to tie her hands. Defendant put his hand against her vaginal area, but did not make penetration. [The victim] fought him until she was exhausted. She thought she was going to die. [The victim] begged for him to stop. Defendant stopped his attack, had her wait inside her bathroom, and left her residence.

> During this attack, [the victim] was able to bite the defendant on the hand. This bite produced a piece of skin that was submitted to the Tennessee Bureau of Investigation, Forensic Services Crime Laboratory for DNA analysis. This analysis produced a profile on John Doe that can exclude any other possible suspect. (See attached DNA profile identifying John Doe.)

The affidavit of complaint contained a detailed STR DNA profile of the John Doe.[4] Based on the information provided by Officer Baker, the Davidson County Clerk issued an arrest warrant, bearing the number GS122, for "John Doe." Later, in April of 2006, over twelve years after the offense, a grand jury issued a multi-count indictment charging the John Doe with several crimes, including counts for aggravated rape as to the victim and aggravated

---

[2] DNA has been described as "a molecule that encodes the genetic information in all living organisms." 4 David L. Faigman et al., Modern Scientific Evidence: The Law and Science of Expert Testimony § 31:1, at 114-15 (Forensics ed. 2011–2012). "The technology for DNA profiling and the methods for estimating frequencies and related statistics have progressed to the point where the reliability and validity of properly collected and analyzed DNA data should not be in doubt." Comm. on DNA Forensic Sci., Nat'l Research Council, The Evaluation of Forensic DNA Evidence 2 (1996) [hereinafter NRC].

[3] The statute of limitations for aggravated rape, a Class A felony, is fifteen years; the statute of limitations for attempted aggravated rape, a Class B felony, is eight years. See Tenn. Code Ann. § 40-2-101(b)(1)–(2) (2012).

[4] Short tandem repeats (STR) is a method of DNA-typing that "can yield unambiguous identification of individual [DNA loci]." NRC at 70, 73.

burglary of her residence.[5]  Two months later, as a result of the indictment, the Davidson County Criminal Court issued a capias, "replac[ing] unserved warrant GS122," for "John Doe," also known as the "Wooded Rapist."

In 2008, the police discovered that the partial fingerprint developed from the skin recovered at the scene matched a print provided by Robert Jason Burdick (the "Defendant"), which was taken in 1999 when he applied for work at the Department of Correction.  Further, the palm print lifted from the garage window sill was found to match the Defendant's right hand.  After obtaining a warrant, the police administered a cheek swab of the Defendant and subsequently determined that his DNA matched the profile developed from the piece of skin that was recovered after the 1994 attack.  In May of 2008, a superseding indictment was returned against the Defendant, replacing the "John Doe" indictment.  Following a two-day trial, the jury found the Defendant guilty of attempted aggravated rape, a lesser-included offense of the original charge.  See Tenn. Code Ann. §§ 39-13-502 (aggravated rape), 39-12-101 (1991) (criminal attempt), 39-12-107 (1991) (classifications of attempt).  The trial court imposed a Range I sentence of ten years in the Department of Correction.  The Court of Criminal Appeals affirmed the conviction, holding that the "John Doe" warrant with the DNA profile was adequate identification so as to commence prosecution against the Defendant within the applicable statute of limitations.

In his application for permission to appeal to this Court, the Defendant contended, first, that the filing of a "John Doe" warrant was insufficient to commence prosecution within the eight-year statute of limitations for attempted aggravated rape, and second, that the issuance of the warrant did not provide him with sufficient notice of the charge.  We granted review to determine (1) whether a criminal prosecution is properly and timely commenced by an arrest warrant that identifies an accused only by gender and DNA profile, and (2) whether such a warrant provides a defendant with sufficient notice of the charges against him or her.  The issue of commencing prosecution through DNA identification of an accused in an arrest warrant is one of first impression in this Court.

## II. Standard of Review

As indicated by the Court of Criminal Appeals, the underlying facts of this case are not in dispute, and the issues presented involve construction and interpretation of various statutes and rules of criminal procedure.  The applicable standard of review for statutory construction is de novo.  State v. Edmondson, 231 S.W.3d 925, 927 (Tenn. 2007).  The same standard applies to the Tennessee Rules of Criminal Procedure.  State v. Ferrante, 269 S.W.3d 908, 911 (Tenn. 2008).

---

[5] The multi-count indictment included other charges unrelated to the victim.  The burglary charge is not a part of this appeal.

### III. Analysis

A prosecution for a felony offense must, of course, be commenced within the statutory limitations period or else the prosecution is barred. See Tenn. Code Ann. § 40-2-101; Hickey v. State, 174 S.W. 269 (Tenn. 1915). It is well established that the purpose of a limitations period is "to protect a defendant against delay and the use of stale evidence and to provide an incentive for efficient prosecutorial action in criminal cases." State v. Nielsen, 44 S.W.3d 496, 499 (Tenn. 2001). "So long as the prosecution begins within the prescribed limitations period, a subsequent indictment may issue despite any delay." State v. Lawson, 291 S.W.3d 864, 871 (Tenn. 2009). A prosecution is initiated by several triggering events, one being the issuance of an arrest warrant. Tenn. Code Ann. § 40-2-104 (2012) ("A prosecution is commenced . . . by . . . the issuing of a warrant . . . ."). At the time the warrant in this case was issued, Tennessee Code Annotated section 40-6-208 (1997), which governed the substantive requirements for an arrest warrant, provided as follows:

> (a) The warrant should specify the name of the defendant, but if it is unknown to the magistrate, the defendant may be designated therein by any name.
> (b) It should also state the offense either by name, or so that it can be clearly inferred.
> (c) It should also show, in some part, the county in which issued, the name and initials of office of the magistrate.

Rule 4(a) of the Tennessee Rules of Criminal Procedure authorizes the issuance of an arrest warrant if the affidavit of complaint "establish[es] that there is probable cause to believe that an offense has been committed and that the defendant has committed it." Rule 4 further provides that an arrest warrant shall "be signed by the magistrate or clerk [and] contain the name of the defendant or, if this name is unknown, any name or description by which the defendant can be identified with reasonable certainty." Tenn. R. Crim. P. 4(c)(1)(A)–(B) (emphasis added). This rule is practically identical to its federal counterpart. Fed. R. Crim. P. 4(b)(1)(A) ("A warrant must . . . contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty[.]").

Attempted aggravated rape is a Class B felony, for which the applicable statute of limitations for commencement of prosecution is eight years. See Tenn. Code Ann. §§ 39-13-502, 39-12-107(a), 40-2-101(b)(2). The offense occurred on March 1, 1994. As a result, the limitations period for commencement of the prosecution for the convicted offense of attempted aggravated rape expired on March 1, 2002, absent any tolling of the statute. Arrest warrant GS122 and the affidavit of complaint against "John Doe," with the accompanying DNA profile, were filed on February 2, 2000, which was well within the eight-year limitations period.

The Defendant does not dispute that the affidavit of complaint established probable cause for the issuance of an arrest warrant. The affidavit included allegations of the essential facts constituting the offense of attempted aggravated rape and provided by attachment a detailed STR DNA profile developed from the skin sample. As required, the affidavit was signed by Officer Baker and by a commissioner for the General Sessions Court. See Tenn. R. Crim. P. 3 (requiring that the affidavit be made in writing and upon oath before a magistrate or court clerk, and contain the essential facts of an offense). Arrest warrant GS122 noted that the affidavit of complaint was attached thereto, and the affidavit referenced the "attached DNA profile identifying John Doe."

The first issue is whether the warrant sufficiently identified the Defendant by the references to "John Doe" and the inclusion of his DNA profile, so as to commence prosecution within the statutory limitations period. The Defendant asserts that an arrest warrant must place the accused on notice that he has been charged with an offense, or else the prosecution did not commence; he insists that the DNA identification in the "John Doe" warrant failed to meet that requirement.[6] See Tenn. Code Ann. § 40-6-208(a); Tenn. R. Crim. P. 4(c)(1)(B). Other jurisdictions, however, have considered the issue presented here and have concluded, under constitutional, statutory, and procedural rules similar to those in Tennessee, that "John Doe" warrants may be sufficient to commence a prosecution or at least toll the applicable statute of limitations.

Initially, the Fourth Amendment to the United States Constitution guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). The corresponding provision in the Tennessee Constitution is worded differently, providing that "general warrants, whereby an officer may be commanded to . . . seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted." Tenn. Const. art. I, § 7 (emphasis added). In the context of the Fourth Amendment, the particularity requirement guarantees that a search or seizure "will not take on the character of the wide-ranging exploratory searches [or seizures] the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987). As reflected by our state

_____

[6] As a threshold issue, the Defendant contends that the State failed to produce a warrant indicating that the prosecution commenced within the limitations period; however, the record on appeal was supplemented by the trial court to include a February 2, 2000 document entitled "State Warrant, State of Tennessee, County of Davidson" with the number GS122 affixed. The warrant identifies "John Doe" as the suspect and contains allegations of attempted aggravated rape causing bodily injury. The warrant includes the affidavit of complaint as an attachment, and is further signed by the deputy clerk. We conclude, therefore, that a warrant was issued within the limitations period. See Tenn. Code Ann. § 40-6-208.

constitution, "[t]he framers . . . included the particular description requirement to prevent the issuance of general warrants, a practice which was prevalent during the colonial era of this country." W. Mark Ward, Tennessee Criminal Trial Practice § 4:12 (2012–2013 ed.); see also State v. Vanderford, 980 S.W.2d 390, 403-04 (Tenn. Crim. App. 1997).

Over one hundred years ago, in West v. Cabell, 153 U.S. 78 (1894), the United States Supreme Court addressed the issue of the validity of an arrest warrant that incorrectly named the arrestee. The original oath of complaint and subsequent arrest warrant named the suspect as "James West" when the defendant, "Vandy M. West," had never been known by any other name. Id. at 85. Both the complainant and the magistrate who issued the warrant testified that the warrant was intended for the defendant, despite the error in the name. Id. Recognizing the common law principle that "a warrant for the arrest of a person charged with crime must truly name him, or describe him sufficiently to identify him," id., the Court concluded that "the private intention of the magistrate was [not] a sufficient substitute for the constitutional requirement of a particular description in the warrant." Id. at 88. In consequence, the Court held that the warrant for the arrest of "James West," without any further description, was invalid to arrest a person named "Vandy M. West." Id.

As stated, other jurisdictions have often addressed the constitutional requirements of particularity for the issuance of arrest warrants. See James Herbie DiFonzo, In Praise of Statutes of Limitations in Sex Offense Cases, 41 Hous. L. Rev. 1205, 1221-31 (2004); Meredith A. Bieber, Comment, Meeting the Statute or Beating It: Using "John Doe" Indictments Based on DNA to Meet the Statute of Limitations, 150 U. Pa. L. Rev. 1079, 1081-86 (2002) [hereinafter Bieber, 150 U. Pa. L. Rev.]. Generally, arrest warrants either describing the suspect only as "John Doe" or inaccurately naming an individual without some other identifying description have been ruled insufficient under the naming requirement of the Fourth Amendment. See, e.g., United States v. Doe, 703 F.2d 745, 747-48 (3d Cir. 1983) (holding that an arrest warrant describing the suspect only as "John Doe a/k/a Ed" was constitutionally insufficient and that an officer's personal knowledge of that suspect did not cure the insufficiency); United States v. Swanner, 237 F. Supp. 69, 71 (E.D. Tenn. 1964) (holding that the use of a "John Doe" warrant may be permissible only with some additional description of the person designated by the warrant); People v. Montoya, 63 Cal. Rptr. 73, 77-78 (Ct. App. 1967) (holding that "John Doe" warrant, which described suspect as "white male adult, 30 to 35 years, 5 [feet] 10 [inches,] 175 lbs.[,] dark hair, medium build" lacked adequate specificity). But see United States v. Ferrone, 438 F.2d 381, 389 (3d Cir. 1971) ("We hold that the physical description of [the defendant], coupled with the precise location at which he could be found, was sufficient and the John Doe warrant was, therefore, valid."); Blocker v. Clark, 54 S.E. 1022, 1023 (Ga. 1906) (noting that a "John Doe" warrant may be valid if it includes other identifying information such as occupation, personal appearance, or place of residence).

The advent of DNA analysis introduced a new layer of consideration, not only as to the particularity requirements of the Fourth Amendment, but also as to statutory provisions and procedural rules requiring that a suspect be described with "reasonable certainty." DNA evidence has become "'a powerful law-enforcement weapon, especially in cases of rape, because it has the potential to exonerate a suspect or to place him at the scene of a crime.'" Veronica Valdivieso, DNA Warrants: A Panacea for Old, Cold Rape Cases?, 90 Geo. L.J. 1009, 1018 (2002) (quoting George J. Annas, Setting Standards for the Use of DNA-Typing Results in the Courtroom—The State of the Art, 326 New Eng. J. Med. 1641, 1641 (1992)). As one court has observed, "[a] properly generated DNA profile is a string of code that exclusively identifies a person's hereditary composition with near infallibility." Commonwealth v. Dixon, 938 N.E.2d 878, 884 (Mass. 2010) (citing NRC at 2 (technology for DNA profiling has "progressed to the point where the reliability and validity of properly collected and analyzed DNA data should not be in doubt")).

The Wisconsin Court of Appeals appears to have been the first to address the question of whether a "John Doe" warrant identifying a suspect by a DNA profile serves to commence a prosecution within the applicable statute of limitations. In State v. Dabney, 663 N.W.2d 366 (Wis. Ct. App. 2003), under circumstances almost identical to those in the case before us, the complaint and arrest warrant initially identified the suspect as "John Doe," charged him with certain sexual assault offenses, and set forth a unique DNA profile obtained from evidence recovered from the victim. Id. at 369. Similar to the statutory requirements in Tennessee, Wisconsin law required an arrest warrant to "[s]tate the name of the person to be arrested, if known, or if not known, designate the person to be arrested by any description by which the person to be arrested can be identified with reasonable certainty." Id. at 371 (citing Wis. Stat. § 968.04(3)(a)(4)). Because "the particularity or reasonable certainty requirements [of the statute did] not absolutely require that a person's name appear in the complaint or warrant," id. at 371, the Wisconsin court concluded "that for purposes of identifying 'a particular person' . . . , a DNA profile is arguably the most discrete, exclusive means of personal identification" and, therefore, satisfied the "reasonable certainty" requirements of an arrest warrant, id. at 372 (citing Bieber, 150 U. Pa. L. Rev. at 1085 ("A genetic code describes a person with far greater precision than a physical description or a name.")).

Several jurisdictions have addressed the issue since Dabney and most have concluded that inclusion or reference to a unique DNA profile in a "John Doe" arrest warrant or indictment sufficiently describes a person to satisfy statutory requirements. In State v. Danley, the Ohio Court of Common Pleas cited Dabney with approval and held that an affidavit of complaint and arrest warrant against "John Doe," which identified the suspect by gender and a DNA profile, was sufficient to commence the criminal action, thereby tolling the statute of limitations. 853 N.E.2d 1224, 1226-28 (Ohio Ct. Com. Pl. 2006). More

recently, in People v. Robinson, the California Supreme Court ruled that an arrest warrant that described the suspect only as "John Doe, unknown male" with a unique 13-loci DNA profile adequately identified the defendant under both the Fourth Amendment and California's statutory scheme, thus timely commencing the prosecution. 224 P.3d 55, 75-76 (Cal. 2010).[7] Finally, in Dixon, the Massachusetts Supreme Court observed that a DNA profile is more than a description; "it is, metaphorically, an indelible 'bar code' that labels an individual's identity with nearly irrefutable precision." 938 N.E.2d at 885 (citing NRC at 2, 7, 9). Consequently, that court held that a "John Doe" indictment incorporating the suspect's unique DNA profile and additional physical description "unassailably fulfil[led] the constitutional requirement that an indictment provide 'words of description which have particular reference to the person whom the Commonwealth seeks to convict,'" sufficiently identified the defendant, and tolled the statute of limitations.[8] Id. at 885-86.

Our research yielded only one instance in which a court has dismissed a prosecution that involved an effort at DNA identification in an arrest warrant. In State v. Belt, 179 P.3d 443 (Kan. 2008), the Kansas Supreme Court invalidated six separate warrants charging "John Doe" in sexual assault and rape cases. While the high court in Kansas agreed with the reasoning of Dabney and Robinson, those cases were distinguishable on their facts because neither the arrest warrants nor the affidavits of complaint in the Kansas cases set forth the unique DNA profiles of the suspects. Id. at 450. Instead, some of the warrants identified the suspects by only two DNA loci, which are shared by all humans, and in another warrant the suspect was identified only as "John Doe" without any accompanying DNA loci. Id. at 449-50. The court held that the State should have included the entire DNA loci in order to identify the unique DNA profile of the suspects, and without such information, the "John Doe" warrants did not meet the "reasonable certainty" requirements of the Kansas statute. Id. at 450-51; see also Kan. Stat. Ann. § 22-2304(a) (West 2011).

We are persuaded that a DNA profile exclusively identifies an accused with nearly irrefutable precision and, as a general rule, satisfies the particularity requirements of the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. In our view, the "John Doe" designation in the warrant at issue, coupled with the detailed DNA profile of the assailant, identified the Defendant with "reasonable certainty," as is required by both constitution and statute. See U.S. Const. amend. IV; Tenn.

---

[7] See Cal. Penal Code § 815 ("A warrant of arrest shall specify the name of the defendant or, if it is unknown to the . . . issuing authority, the defendant may be designated therein by any name.").

[8] The court endorsed the practice of incorporating a DNA profile into a "John Doe" indictment that also includes physically descriptive information; however, the court left unanswered "the question whether an indictment naming only a DNA profile, without more, comports with the particularity requirement of . . . the Massachusetts Constitution." Id. at 884 n.16 (emphasis added).

Const. art. I, § 7; Tenn. Code Ann. § 40-6-208; Tenn. R. Crim. P. 4(c)(1)(B). As a result, the prosecution was properly and timely commenced within the eight-year statute of limitations by the filing of the "John Doe" arrest warrant on February 2, 2000.[9]

As a second issue, the Defendant generally cites to the Sixth Amendment to the United States Constitution in support of his argument that his DNA profile was insufficient to provide him with notice that he had been charged with an offense. Because most people do not know their DNA profile, the Defendant argues that identification by that means is constitutionally insufficient. We disagree.

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The related provision of the Tennessee Constitution states "[t]hat in all criminal prosecutions, the accused hath the right . . . to demand the nature and cause of the accusation against him." Tenn. Const. art. I, § 9. Generally, the protections of the Sixth Amendment attach at arraignment or when a defendant first appears before a judicial officer and is informed of the charge in the complaint and of various rights in further proceedings. See 1 Wayne R. LaFave et al., Criminal Procedure § 1.4(g), at 135 (3d ed. 2007); see also Garland v. Washington, 232 U.S. 642, 644 (1914) (stating that the purpose of the arraignment is to "inform the accused of the charge against him and obtain an answer from him"); State v. Sutton, 761 S.W.2d 763, 769 (Tenn. 1988) ("Arraignment in this state is a proceeding to inform an accused of the charges instituted by the grand jury, to provide him with a copy, and to 'call him to plead.'").[10] Accordingly, the fact that an arrest warrant does not refer to a defendant by name does not implicate the notice provisions of the Sixth

---

[9] Related to this argument, the Defendant contends that only the General Assembly can statutorily create a tolling provision for the statute of limitations, and because the General Assembly has not acted, this Court is without authority to judicially create a tolling provision. See Matthews v. State, No. W2005-02939-CCA-R3-PC, 2006 WL 2843291, at *4 (Tenn. Crim. App. Oct. 5, 2006) (declining to adopt a judicially created rule that would toll the statute of limitations pending identification of the assailant). Our analysis, however, does nothing more than interpret existing statutes and rules governing the filing of arrest warrants and applicable statutes of limitations, which is our responsibility. "It is the duty of the court to enforce [the] law as it is found upon the statute book[.]" Scheibler v. Mundinger, 9 S.W. 33, 39 (Tenn. 1888); see also Jackson v. Jackson, 210 S.W.2d 332, 334 (Tenn. 1948) ("As a Court we take the [law] as it was written by the Legislature, not as we would write it.").

[10] Tennessee Rule of Criminal Procedure 10(b)(3) provides that "[t]he arraignment shall consist of . . . reading the indictment, presentment, or information to the defendant or stating to the defendant the substance of the charge."

Amendment or article I, section 9 of the Tennessee Constitution.[11]

Moreover, defendants in other cases in which "John Doe" warrants have been issued have made similar arguments that have ultimately proven unsuccessful. In Dabney, the defendant argued deprivation of due process, complaining of the insufficient notice of the nature of the charges because the original arrest warrant identified him only by his DNA profile. 663 N.W.2d at 374. The Wisconsin court concluded that "[a] defendant is not entitled to specific notice that the state is issuing a complaint and seeking an arrest warrant. . . . [A] warrant is issued without any involvement from the defendant and the defendant is not provided with any notice of the underlying charge until the warrant is executed." Id. In that case, the warrant was not executed until Dabney's name was substituted for "John Doe," and the fact that Dabney did not know his specific DNA profile or have any specific training or ability to analyze his DNA profile was deemed inconsequential. Id. Practically speaking, no suspect, whether identified by proper name or not, is involved in the issuance of an arrest warrant. In fact, a suspect will often be unaware that a warrant for his or her arrest exists until it is executed. As in Dabney, the arrest warrant in the case before us was not executed until the Defendant had been identified through DNA analysis and comparison. The indictment was likewise amended to reflect the Defendant's proper name after the DNA match was secured. The minutes of the trial court reflect that the Defendant was arraigned upon the amended indictment, which included his proper name.

Similarly, in People v. Martinez, 855 N.Y.S.2d 522, 523-24 (N.Y. App. Div. 2008), the New York Supreme Court rejected the defendant's claim that the "John Doe" indictment issued in that case, which identified the defendant only by his DNA profile, deprived him of his constitutional right to fair notice of the accusations made against him. The court held that

> [t]o satisfy th[e] notice requirement [of the Sixth Amendment], the indictment must allege all the legally material elements of the charged crime and state that [the] defendant in fact committed the acts which comprise the elements. The "basic essential function of an indictment . . . is simply to notify the defendant of the crime of which he stands indicted[.]"

Id. at 525 (quoting People v. Iannone, 384 N.E.2d 656, 662-63 (N.Y. 1978)). The court

---

[11] The California Supreme Court rejected the defendant's allegation in Robinson that he was provided insufficient notice of the charges against him under the particularity requirement of the Fourth Amendment. As that court noted, the particularity requirement relates to the validity of the instrument and "has nothing to do with notice to the subject that a warrant has issued or charges have been filed. The subject receives notice when a warrant is executed, or an accusatory pleading is served, and no other notice is necessarily required." Robinson, 224 P.3d at 75 n.29.

further explained that the defendant's right to notice of the charges attached at his arraignment, when he was informed of the charges against him and given a copy of the indictment, and not before that time.

### IV. Conclusion

A criminal prosecution is commenced if, within the statute of limitations for a particular offense, a warrant is issued identifying the defendant by gender and his or her unique DNA profile. Furthermore, a superseding indictment in the defendant's proper name provides the requisite notice of the charge. The judgment of conviction is, therefore, affirmed. Costs are taxed to Robert Jason Burdick, and his surety, for which execution may issue if necessary.

_____
GARY R. WADE, CHIEF JUSTICE