IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

ROBERT JAMES NEESE,
*Appellant.*

No. 1 CA-CR 14-0705
FILED 1-7-2016

Appeal from the Superior Court in Maricopa County
No.  CR2005-007461-001
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

The Hopkins Law Office, PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

---

**OPINION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Robert James Neese appeals from his convictions and resulting sentences for seven counts of burglary in the second degree, one count of burglary in the first degree, and seven counts of theft. Neese argues the trial court erred in denying his motion to dismiss based on the running of the statute of limitations. The State contends that the use of a DNA profile to commence a prosecution of an unnamed defendant tolled the statute of limitations. For the following reasons, we affirm Neese's convictions and sentences. Additionally, we amend a typographical error in the sentencing minute entry.

**FACTS AND PROCEDURAL HISTORY**

¶2        Beginning in 1999, Scottsdale police investigated a number of residential burglaries and related thefts. Although unable to identify a possible suspect, police obtained DNA evidence from the crime scenes, and the evidence was forensically tested. DNA analysts subsequently found that the multiple samples of DNA shared the same genetic markers and a unique DNA profile was created (DNA Profile) from that evidence. A federal databank of DNA profiles did not produce a match for an individual whose genetic markers matched those of the DNA Profile.

¶3        On March 15, 2005, an indictment (Indictment) was filed charging "John Doe, I" with seven counts of burglary in the second degree, class 3 felonies; three counts of theft, class 5 felonies; one count of burglary in the first degree, a class 3 felony; three counts of theft, class 3 felonies; and one count of theft, a class 2 felony. The Indictment identified John Doe I as an "Unknown Male with Matching Deoxyribonucleic Acid . . . Profile at Genetic Locations" followed by a string of the genetic markers found at thirteen locations that collectively characterize the DNA Profile. The alleged offenses occurred between 1999 and 2004.

¶4        In May, 2011, a DNA sample was obtained from Neese that matched the DNA Profile. An amended indictment (Amended Indictment)

was filed substituting the John Doe I designation and DNA Profile identification with Neese's name as the defendant. The court issued a second warrant based on the Amended Indictment that identified Neese by his full name, date of birth, and other physical characteristics. Neese was arrested and entered a not guilty plea at his arraignment.

¶5        Neese subsequently moved to dismiss the twelve counts relating to offenses occurring before May 2004, arguing that the applicable seven-year statute of limitations had expired before the State amended the Indictment naming him as the defendant.[1] Neese argued that the DNA Profile in the Indictment did "not serve to identify someone," and, because a "John Doe" could not be convicted, the Indictment did not toll the statute of limitations.

¶6        The court denied the motion, and Neese unsuccessfully sought special action relief. A jury subsequently found Neese guilty as charged, and he was sentenced to prison for 22.75 years. Neese appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21.A.1, 13-4031 and -4033.A.1 (West 2015).[2]

**DISCUSSION**

I.    Motion to Dismiss: Statute of Limitations

¶7        The applicable statute of limitations for the 1999 offenses was seven years, and it began to expire at the end of June 2006. *See* A.R.S. § 13-107.B.1. Although the Indictment was filed on March 15, 2005, well within the limitations period, the Amended Indictment naming Neese was filed in 2011, years after the statutory limitations period expired. *See* A.R.S.

---

[1]    Although the first degree burglary offense allegedly occurred before 2004, Neese did not seek dismissal of that count ostensibly because the applicable statute of limitations had not expired on that serious offense when the State amended the indictment. *See* Arizona Revised Statutes (A.R.S.) section 13-107.E (period of limitation does not run for a serious offense as defined in A.R.S. § 13-706 during any time when the identity of the person who commits the offense or offenses is unknown).

[2]    We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

§ 13-107.C (filing of indictment commences prosecution). As a result, Neese argues the court erred by denying his motion to dismiss because the DNA Profile used in the Indictment did not sufficiently identify him to toll the statute of limitations beyond the seven year limitation period. Analogizing the DNA Profile to fingerprints, Neese contends that the DNA Profile was merely evidence; thus, the Indictment was not issued against a "known person." He implies, as a result, that the Indictment improperly failed to give him notice of the charges. Neese further argues that based on A.R.S. § 13-107.E,[3] the legislature did not contemplate DNA profiles being used as "identification mechanism[s,]" and he warns of the "practical fallout" of issuing warrants to a DNA profile.

¶8　　　　We interpret statutes and rules of procedure de novo. *Taylor v. Cruikshank*, 214 Ariz. 40, 43, ¶ 10 (App. 2006). Similarly, we "independently review any questions of law relating to the statute of limitations defense." *State v. Aguilar*, 218 Ariz. 25, 30, ¶ 15 (App. 2008) (quoting *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996)).

¶9　　　　An indictment charging an unknown defendant must contain "any name or description by which he can be identified with reasonable certainty." Ariz. R. Crim. P. 13.2, cmt.[4] The propriety of using a DNA profile for identification purposes to commence prosecution of an unnamed defendant is an issue of first impression in Arizona.

¶10　　　　Courts in other jurisdictions, however, have addressed the issue and concluded that a unique DNA profile in a "John Doe" indictment (or other prosecution-commencing event) identifies the defendant (or suspect) with "reasonable certainty" or other similar standard of particularity. *See, e.g.*, *State v. Danley*, 853 N.E.2d 1224, 1226-28, ¶¶ 7-12 (Ohio Ct. Comm. Pleas 2006) (holding statute of limitations tolled when John Doe DNA warrant was served on defendant); *People v. Martinez,* 52 A.D.3d 68, 70-71　(N.Y. App. Div. 2008) (rejecting argument that John Doe DNA indictment was defective because it did not name or adequately

---

[3]　　"The period of limitation does not run for a serious offense as defined in § 13-706 during any time when the identity of the person who commits the offense or offenses is unknown." A.R.S. § 13-107.E.

[4]　　*See also* Ariz. R. Crim. P. 3.2(a) ("[An arrest] warrant shall . . . contain the name of the defendant or, if the defendant's name is unknown, any name or description by which the defendant can be identified with reasonable certainty.").

describe defendant); *People v. Robinson*, 224 P.3d 55, 75 (Cal. 2010) (holding that an arrest warrant describing a defendant by a DNA profile identifies the defendant with "sufficient particularity"); *State v. Burdick*, 395 S.W.3d 120, 128 (Tenn. 2012) (holding that a "DNA profile exclusively identifies an accused with nearly irrefutable precision"); *State v. Younge*, 321 P.3d 1127, 1131-33, ¶¶ 12-14 (Utah 2013) (holding that the requirement that a charging document "charge a person" was satisfied by identifying an unknown John Doe defendant with a DNA profile); *State v. Carlson*, 845 N.W.2d 827, 831-32 (Minn. Ct. App. 2014) (holding that a DNA profile meets and exceeds particularity requirements); *see also* Daniel Gaudet, *Waiting for John Doe: The Practical and Constitutional Implications of DNA Indictments*, 18 Suffolk J. Trial & App. Advoc. 106, 107 (2013) (noting that "courts have found overwhelmingly in favor of the constitutionality of [John Doe DNA] indictments.").

¶11        The issue first arose in *State v. Dabney*, 663 N.W.2d 366 (Wis. Ct. App. 2003), and the Tennessee Supreme Court, in agreeing with the *Dabney* decision, described the Wisconsin court's reasoning as follows:

> In *State v. Dabney*, . . . , under circumstances almost identical to those in the case before us, the complaint and arrest warrant initially identified the suspect as "John Doe," charged him with certain sexual assault offenses, and set forth a unique DNA profile obtained from evidence recovered from the victim. [*Dabney*] at 369. Similar to the statutory requirements in Tennessee, Wisconsin law required an arrest warrant to "[s]tate the name of the person to be arrested, if known, or if not known, designate the person to be arrested by any description by which the person to be arrested can be identified with reasonable certainty." *Id.* at 371 (citing Wis. Stat. § 968.04(3)(a)(4)). Because "the particularity or reasonable certainty requirements [of the statute did] not absolutely require that a person's name appear in the complaint or warrant," *id.* at 371, the Wisconsin court concluded "that for purposes of identifying 'a particular person' . . . , a DNA profile is arguably the most discrete, exclusive means of personal identification" and, therefore, satisfied the "reasonable certainty" requirements of an arrest warrant, *id.* at 372 (citing [Meredith A. Bieber, Comment, *Meeting the Statute or Beating It: Using "John Doe" Indictments Based on DNA to Meet the Statute of Limitations*, 150 U. Pa. L.Rev. 1079, 1085 (2002)] ("A genetic code describes a person

with far greater precision than a physical description or a name.")).

*Burdick*, 395 S.W.3d at 127. [5]

**¶12**　　　We agree with the reasoning of *Dabney, Burdick,* and similar rulings in other jurisdictions.　We do so because Arizona law does not require an indictment to name a defendant; rather, if the person's name is unknown, the indictment need only provide a description that identifies the defendant "with reasonable certainty." Ariz. R. Crim. P. 13.2, cmt.　The DNA Profile in the Indictment satisfied the "reasonable certainty" requirement.[6]　Also, nothing in A.R.S. § 13-107.E implies a legislative intent to require a suspect's name for identification purposes.　Furthermore, the impracticality of using a DNA profile to serve an arrest warrant on a physically unrecognizable person, as Neese argues, is not dispositive.　Such a warrant will only be served after law enforcement discovers a name connected to a DNA profile.　"This extra step, however, is not unique to a warrant based on DNA.　No matter how well a warrant describes the individual, extrinsic information is commonly needed to execute it. If a name is given, information to link the name to the physical person must be acquired." *Dabney*, 663 N.W.2d at 372, ¶ 17.

**¶13**　　　We thus hold that for limitation purposes, a criminal prosecution commences upon the filing of a "John Doe" indictment that identifies a defendant with a unique DNA profile.　Our holding is limited to the facts and procedural history of this case.　There may be instances where a "John Doe" indictment containing a less comprehensive recitation

---

[5]　　In what apparently is the only reported decision concluding otherwise, the Kansas Supreme Court, while agreeing with the reasoning in *Dabney* and *Robinson*, held that John Doe DNA arrest warrants insufficiently identified perpetrators of crimes because the DNA profiles in that case referred only to DNA loci that are common to all humans. *State v. Belt*, 179 P.3d 443, 449-51 (Kan. 2008).

[6]　　Neese does not expressly argue that the DNA Profile in the Indictment could have identified another person.　To the extent he implicitly does so, we disagree. *See, e.g., Com. v. Dixon*, 938 N.E.2d 878, 885 (Mass. 2010) ("A DNA profile is not merely a word 'of description,' it is . . . metaphorically, an indelible 'bar code' that labels an individual's identity with nearly irrefutable precision.") (internal citation omitted); *see also Dabney*, 663 N.W.2d at 372.

of genetic markers may not sufficiently describe the defendant with reasonable certainty. Because the Indictment was filed before the seven-year time limit expired, Neese's prosecution was timely. Neese's reliance on *Taylor*, 214 Ariz. 40, is misplaced. In *Taylor*, the applicable statute of limitations had expired *before* the State filed a John Doe DNA indictment. *Id.* at 41-42, 47, ¶¶ 3, 5-6, 29.

**¶14** We also reject Neese's argument that the Indictment's DNA Profile failed to notify him of the charges, and therefore, the State's amendment of the Indictment after the statute of limitations expired violated his due process rights. Criminal statutes of limitation such as A.R.S. § 13-107 are "not based on [a] fundamental, constitutional right." *State v. Jackson*, 208 Ariz. 56, 63, ¶ 25 (App. 2004) (citing *State v. Timoteo*, 952 P.2d 865, 870 (Haw. 1997)). Rather, statutes of limitation reflect "legislative assessments." *United States v. Marion*, 404 U.S. 307, 322 (1971). Accordingly, the Amended Indictment did not violate Neese's due process rights. Furthermore, Neese does not argue that he lacked notice of the charges when he was arraigned. Because he knew what the charges were at the time of his arraignment, he has demonstrated no prejudice. *See State v. Rosario*, 195 Ariz. 264, 267, ¶ 15 (App. 1999).

II. Evidentiary Hearing

**¶15** Neese also argues the trial court erred in not conducting an evidentiary hearing before ruling on his motion to dismiss. Although Neese requested oral argument on the motion, he did not request an evidentiary hearing; thus, we review the issue for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (failure to object to alleged trial error results in fundamental error review). To obtain relief under fundamental error review, Neese has the burden to show that error occurred, the error was fundamental and that he was prejudiced thereby. *See id.* at 567-68, ¶¶ 20-22.

**¶16** We review the court's failure to *sua sponte* hold an evidentiary hearing for an abuse of discretion. *State v. Wassenaar*, 215 Ariz. 565, 576, ¶ 48 (App. 2007). We find none here.

**¶17** The issue to be decided by Neese's motion was a legal, not factual, one. Neese does not point to any factual dispute that needed to be resolved before the court ruled on his motion to dismiss. Accordingly, Neese has failed to establish error, let alone fundamental error, in the trial court's failure to *sua sponte* order an evidentiary hearing. For the foregoing

reasons, we find the superior court acted within its discretion in denying Neese's motion to dismiss.

III.    Right to a Speedy Trial

**¶18**        Neese argues the trial court should have dismissed the Indictment because the State failed to timely prosecute him from March 2005, the date of the Indictment, to May 2011, the date of the Amended Indictment.

**¶19**        As Neese concedes, we review for fundamental error because he did not assert his speedy trial rights in superior court.  As noted, it is Neese's burden under fundamental error review to establish prejudice.  We will not presume prejudice where none appears affirmatively in the record. *See State v. Trostle*, 191 Ariz. 4, 13 (1997).

**¶20**        Neese does not explain how the six-year delay between the filing of the Indictment and the Amended Indictment prejudiced him.  The only issues to be determined by the jury were whether Neese was impermissibly in the victims' homes intending to commit a felony, and whether he stole the victims' personal property.  Neese has not shown how the six-year delay prevented him from obtaining any exculpatory evidence. He was not incarcerated on the charges until he was arrested in 2011. Similarly, Neese points to nothing in the record indicating the State intentionally (or negligently) caused the delay or otherwise acted in bad faith.   Because Neese's right to a speedy trial was not violated, no fundamental error occurred. [7]

IV.    State's Closing Argument

**¶21**        Neese also argues he was prejudiced by the prosecutor's reference to the length of time it took to prosecute this case in closing argument:

---

[7]        Although, the delay between the Indictment and Amended Indictment was undeniably lengthy, the reason for the delay is clear:  the State had no named suspect until it accessed Neese's DNA.  And once it did possess Neese's DNA, the State acted promptly in amending the Indictment and arresting Neese.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (establishing four-factor balancing test to evaluate speedy trial claims: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant").

> And the other thing to keep in mind, it would be one thing if the first burglary in 1999, the next day, went to his house, there is the property.
>
> And/or the next burglary, the day after, they went to the house or they caught him on the street next to house (sic), what happened to the property? The, well, then there will be a question, where is all the property?
>
> We are talking [seven] years from the last burglary until when they got his DNA in 2011, [seven] years. We are talking [twelve] years from the 1999 burglaries to when they obtained his DNA.
>
> And do you think he can get rid of property in [seven] years, or [eight] years or ten years or [twelve] years without it turning up? Absolutely.

The prosecutor's comments were made to rebut defense counsel's closing argument regarding the lack of evidence connecting Neese to the burglaries. Defense counsel explained to the jury:

> Well, if the evidence was acquired as to DNA in 2011, that they believed tied him to these matters in 1999 through 2004, where are the items? Where is the evidence he ever had them? Where is all the money? Where did it go?
>
> . . .
>
> There were no witnesses that he had anything, how does that go unnoticed?

¶22 In light of defense counsel's argument we find no misconduct. In addition, we find no prejudice in view of the DNA evidence linking Neese to the crime scenes. Accordingly, Neese fails to satisfy his burden of establishing prejudice. *See State v. Diaz*, 223 Ariz. 358, 361, ¶ 13 (2010) ("We will not reverse a conviction based on speculation or unsupported inference.").

V. Sentencing Minute Entry

¶23 The Indictment incorrectly referred to a nonresidential structure in the first degree burglary count (Count 5), and, therefore, noted it was a class 3 felony. Because Count 5 alleged Neese or an accomplice

knowingly possessed a handgun while committing the burglary, the State, without objection, orally amended Count 5 to reflect its proper class 2 felony designation as a burglary of a residential structure. *See* A.R.S. § 13-1508.B.

**¶24**        The evidence at trial revealed that the victim's home (i.e., residential structure) had been burglarized.    Before deliberations commenced, the court instructed the jury on the amended count.  The court sentenced Neese on Count 5 to 9.25 years' incarceration, the presumptive term for a class 2 felony conviction as a subsequent offense to a second felony offense under then-applicable A.R.S. § 13-702.02.B.4 (2000). However, the sentencing minute entry incorrectly refers to Count 5 as a class 3 felony.  Pursuant to our authority under A.R.S. § 13-4037.A, we amend the sentencing minute entry filed August 12, 2013, to correctly reflect Count 5 as a class 2 felony. *See State v. Contreras*, 180 Ariz. 450, 453 n.2 (App. 1994) ("When we are able to ascertain the trial court's intention by reference to the record, remand for clarification is unnecessary.").

## CONCLUSION

**¶25**        For the foregoing reasons, we affirm Neese's convictions and the resulting sentences, but amend the sentencing minute entry to reflect the correct nature of Count 5 as a class 2 felony.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama