NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JO ELLEN WHITLOCK, *Appellant*.

No. 1 CA-CR 16-0022
FILED 9-20-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2014-136372-001
The Honorable James R. Rummage, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1            Jo Ellen Whitlock appeals her convictions and sentences for theft of means of transportation and possession of burglary tools. We affirm Whitlock's convictions but modify her sentences to reflect an additional 60 days of presentence incarceration credit.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2            In the early morning hours of July 29, 2014, Officer Nollette ran the license plate of a 1996 Infiniti stopped in front of him at a traffic light, learning that the vehicle had been reported stolen. The officer followed the vehicle into a business parking lot. After the occupants exited the car, Officer Nollette approached the driver — Whitlock — and advised her of her *Miranda* rights.

¶3            After being placed in the patrol car, Whitlock agreed to answer questions and stated that the Infiniti belonged to a man named "Oscar." Whitlock asked Officer Nollette to retrieve her purse from the vehicle. As he carried the open purse to the patrol car, Officer Nollette saw a clear envelope containing a vehicle registration form. He asked Whitlock whether the purse belonged to her, and she responded affirmatively. When the officer removed the envelope from the purse, he discovered it contained the vehicle registration, title, and insurance documentation — all in the name of the registered owner ("the victim").

¶4            Officer Nollette conducted an inventory search of the vehicle and recovered a key from the ignition. He immediately noticed the key was "odd," and "it took a little manipulation to get the key out of the ignition." The key had no logo or brand name and was "worn down," without the "normal lines or edges." Although Officer Nollette was "eventually" able

---

[1]      We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

to start the car with the key, "it did not work in the trunk." Based on his training and experience, the officer identified the key as a "jiggle key" that had been worn down to fit the ignition of a vehicle for which it was not made.

¶5    At the police station, Officer Nollette again asked Whitlock about the vehicle's owner, and she responded that it belonged to Alfredo Robles, who loaned it to her approximately three weeks earlier. Whitlock had no contact information for Robles. She said that Robles told her to "jiggle" the key in the ignition and admitted suspecting that the car may have been stolen.

¶6    Whitlock was charged with one count of theft of means of transportation and one count of possession of burglary tools. The State also alleged Whitlock had historical prior felony convictions.

¶7    At trial, the victim testified that the Infiniti was stolen from her carport in June 2014. At the time of the theft, the car was locked with the windows rolled up. No broken glass was left behind, and the victim retained all keys to the vehicle. When the car was recovered, the victim's keys no longer operated the ignition. The victim did not know Whitlock or anyone named Oscar or Alfredo, and she did not give anyone permission to use her car.

¶8    The jury found Whitlock guilty as charged. The trial court found that Whitlock had four prior felony convictions and sentenced her as a category three repetitive offender to concurrent prison terms: a mitigated term of nine years for theft of means of transportation and a mitigated term of two and three-quarters years for possession of burglary tools. Whitlock timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and -4033(A)(1).

## DISCUSSION

### I.    Sufficiency of the Evidence

¶9    Whitlock argues there was insufficient evidence to convict her of possession of burglary tools. Specifically, she contends the seized key does not qualify as a burglary tool under the relevant statutes.

¶10    We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a

reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). In evaluating the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and "do not reweigh the evidence to decide if we would reach the same conclusions as the trier of fact." *Borquez*, 232 Ariz. at 487, ¶ 9.

¶11            We also interpret statutes *de novo*. *State v. Neese*, 239 Ariz. 84, 86, ¶ 8 (App. 2016). When the language of a statute is clear, "we need not look further to determine the statute's meaning and apply its terms as written." *State v. Lee*, 236 Ariz. 377, 382, ¶ 16 (App. 2014). If statutory language is ambiguous, though, we consider the statute's history, subject matter, and purpose. *Taylor v. Cruikshank*, 214 Ariz. 40, 43, ¶ 10 (App. 2006). We also construe a statute in light of other statutes that relate to the same subject matter, "as though they constituted one law." *State ex rel. Thomas v. Ditsworth*, 216 Ariz. 339, 342, ¶ 12 (App. 2007).

¶12            As charged here, and pursuant to A.R.S. § 13-1505(A)(2) and (B)(2), a person commits possession of burglary tools by possessing or using a motor vehicle manipulation key with the intent to commit theft or any felony. A "manipulation key" is a "key, device or instrument, other than a key that is designed to operate a specific lock, that can be variably positioned and manipulated in a vehicle keyway to operate a lock or cylinder, including a wiggle key, jiggle key or rocker key." A.R.S. § 13-1501(8).

¶13            Relying on A.R.S. § 13-1501(8)'s qualifying phrase — "other than a key that is designed to operate a specific lock" — Whitlock argues the statutory definition of manipulation key excludes a key that was created to correspond to a particular lock but has since been worn or filed down and thereby "adapted" for use in other locks. Stated differently, she contends the key was, at its inception, designed to operate a single lock and did not become a manipulation key when worn down to fit other locks. We conclude otherwise.

¶14            On its face, and given a plain meaning within the context of the statute, the phrase "other than a key that is designed to operate a specific lock" excludes from the definition of "manipulation key" a key that is designed to operate *the* specific lock *at issue*. That is, the use of a key with its paired lock or ignition does not constitute possession of burglary tools

4

under A.R.S. § 13-1505(A)(2).[2] Contrary to Whitlock's argument, however, this relatively narrow exception does not exclude from the statutory definition a worn or filed down key with a non-paired lock.

¶15 But even if the statutory language could be viewed as ambiguous, when read in the context of related statutory provisions, and given the statute's history and purpose, Whitlock's proposed interpretation is untenable. *See State v. Barragan-Sierra*, 219 Ariz. 276, 282, ¶ 17 (App. 2008) (Courts "employ a common sense approach" in interpreting a statute, "reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results.").

¶16 As the State notes, in 2003, the legislature amended A.R.S. §§ 13-1501, -1505, and -1506 to address the growing use of manipulation keys and, in so doing, was advised by law enforcement officials "that thieves actually form" manipulation keys "themselves from *existing keys*." S. Fact Sheet (Jan. 23, 2003), S.B. 1057, 46th Leg., 1st Reg. Sess. (2003); Minutes of the H. Judiciary Comm. (Mar. 6, 2003), 46th Leg., 1st Reg. Sess. (2003) (emphasis added). Thus, even assuming ambiguity in the statutory definition of "manipulation key," given A.R.S. § 13-1505's purpose of preventing property crime, and reading A.R.S. § 13-1501 within the context of the related statutes and relevant legislative history, a manipulation key is any key, device or instrument that can be variably positioned and manipulated in a vehicle keyway to operate a lock or cylinder, other than a key designed to operate the specific lock at issue.

¶17 The worn-down key Whitlock used had no emblem or logo identifying it as an Infiniti key, did not fit the Infiniti's trunk lock, and could only operate the ignition with significant manipulation. Whitlock herself admitted she had to "jiggle" the key to start the engine. In addition, the victim testified she possessed all of the Infiniti's keys at the time of the theft. On this record, the State presented sufficient evidence that the seized key was a manipulation key pursuant to A.R.S. § 13-1501(8).

¶18 Because Whitlock possessed only one manipulation key, the State was also required to prove that she possessed the key "with the intent to commit any theft or felony." A.R.S. § 13-1505(B)(2). Reasonable jurors could conclude from the trial evidence that Whitlock was aware the victim,

---

[2] Accordingly, a duplicate key created to correspond to a particular lock and used with its corresponding lock is not a manipulation key under A.R.S. § 13-1501(8), even if the key has worn down over time.

not "Oscar" or "Alfredo," owned the vehicle. Nevertheless, Whitlock continued driving the vehicle. Under these circumstances, jurors could conclude that Whitlock possessed a manipulation key with the intent to commit theft of means of transportation. *See* A.R.S. § 13-1814(A)(5) (a person commits theft of means of transportation by knowingly controlling another person's means of transportation "having reason to know that the property is stolen").

¶19            Substantial evidence supports Whitlock's conviction for possession of burglary tools.[3]

## II.    **Prosecutorial Misconduct**

¶20            Whitlock next contends the prosecutor engaged in misconduct by presenting intentionally misleading evidence and by implicitly referring to her invocation of the right to remain silent.

¶21            Whitlock did not object on this basis in the trial court, and we therefore review only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005). Under this standard of review, the defendant must first prove that misconduct actually occurred. *State v. Edmisten*, 220 Ariz. 517, 524, ¶ 23 (App. 2009). The defendant must also demonstrate "that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (quoting *State v. Harrod*, 219 Ariz. 268, 278, ¶ 35 (2008)). Prosecutorial misconduct is not "merely the result of legal error, negligence, mistake or insignificant impropriety." *Pool v. Superior Court*, 139 Ariz. 98, 108 (1984). Rather, it is intentional conduct that the prosecutor "knows to be improper and prejudicial and which he pursues for any improper purpose." *Id.* at 108–09.

¶22            Whitlock first asserts the prosecutor presented misleading evidence. Before trial, the State moved to preclude Whitlock from introducing unspecified exculpatory statements she made to officers

---

[3]       Whitlock also argues a key does not qualify as a manipulation key unless it can operate multiple locks. Under the statutory definition, the State was required to prove that the key could manipulate a non-paired vehicle lock or cylinder. The evidence established that both Whitlock and Officer Nollette were able to start the stolen car after manipulating the key in the ignition. This evidence satisfies the statutory requirement.

following her arrest. At a pretrial hearing, the prosecutor explained that Whitlock had told Officer Nollette she became suspicious the car might be stolen, "looked online," and ascertained it had not been reported stolen. Defense counsel acknowledged that the self-serving hearsay statement was inadmissible, and the prosecutor recognized the State might "open the door" if it elicited testimony that Whitlock had "looked on the internet" to determine whether the vehicle was stolen. The trial court granted the State's motion "with respect to any statements [that Whitlock] had looked online." The court advised, though, that "if the State asks the question, it's a whole different ball game."

¶23　　　　Officer Nollette testified at trial that Whitlock admitted she suspected the car might be stolen but continued using it. During cross-examination, defense counsel asked the officer when Whitlock first suspected that the vehicle had been stolen, and he responded that he did not know. Defense counsel inquired whether it was possible Whitlock first suspected the car was stolen when Officer Nollette approached her, to which the officer responded,"It could have been. Sure."

¶24　　　　During redirect, the prosecutor asked Officer Nollette whether a person who suspected she was in possession of a stolen vehicle could contact the police to ascertain whether the vehicle had been reported stolen. Officer Nollette stated that a police officer could provide such assistance, and the prosecutor then asked him whether there was any indication Whitlock "did that in this case, that she contacted the police." Officer Nollette responded, "no." There was no objection to this exchange, but after Officer Nollette's testimony, defense counsel inquired whether the prosecutor had elicited testimony that Whitlock "looked it up" to determine if the vehicle was stolen. The prosecutor responded that no such testimony was given, and defense counsel responded, "All right. That's fine."

¶25　　　　Citing Officer Nollette's redirect testimony, Whitlock argues the prosecutor "intentionally misled" the jury into believing she "had done absolutely nothing to determine whether the car had been reported stolen." But as Whitlock concedes, nothing in the record establishes she in fact consulted a website associated with law enforcement. Nor did the prosecutor violate the court's pretrial evidentiary ruling. At most, the State opened the door to additional evidence by Whitlock. Whitlock, however, did not attempt to present additional evidence about any efforts she made to ascertain whether the vehicle had been stolen.

¶26　　　　Whitlock next argues the prosecutor implicitly commented on her invocation of the right to remain silent. During closing argument, the

prosecutor remarked that the only witnesses were Officer Nollette and the victim, and he characterized their testimony as "undisputed" and "uncontroverted." Indeed, the prosecutor stated "There's no conflicting witnesses, no he-said/she-said. There's only one version of what happened."

¶27 "It is constitutionally impermissible for a prosecutor . . . to comment on a defendant's failure to testify." *State v. Mata*, 125 Ariz. 233, 237 (1980). "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 33 (2003). "To be constitutionally proscribed, a comment must be adverse; that is, it must support an unfavorable inference against the defendant and, therefore, operate as a penalty imposed for exercising a constitutional privilege." *Mata*, 125 Ariz. at 238. A comment that the prosecution's evidence is "uncontradicted" is not objectionable unless the defendant "is the only one who could explain or contradict the evidence offered by the state." *State v. Still*, 119 Ariz. 549, 551 (1978); *State v. Arredondo*, 111 Ariz. 141, 143 (1974) (prosecutor's argument that "everything the officers have said" is "uncontroverted, uncontested" not improper).

¶28 Viewed in context, the prosecutor's argument did not invite jurors to draw an unfavorable inference against Whitlock based on her failure to testify, but rather emphasized that certain evidence was not controverted or disputed. The prosecutor did not suggest Whitlock had elected not to testify because she could not do so without incriminating herself, but instead argued all of the trial evidence supported the State's theory. And as the State observes, Whitlock was not the only person who could have contradicted the State's evidence. The defense could have presented the individual who purportedly gave Whitlock the vehicle or her passenger to refute the State's evidence.

¶29 For the reasons stated, the record establishes no prosecutorial misconduct. "Absent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness." *State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008).

## III. Presentence Incarceration Credit

¶30 Whitlock next contends she did not receive appropriate presentence incarceration credit. Although she did not object on this basis

in the trial court, the failure to give a defendant full credit for presentence incarceration constitutes fundamental error. *State v. Cofield*, 210 Ariz. 84, 86, ¶ 10 (App. 2005).

**¶31** "All time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment." A.R.S. § 13-712(B). A defendant is entitled to a full day of credit for any partial day in custody, *State v. Carnegie*, 174 Ariz. 452, 454 (App. 1993), but no credit for the day of sentencing. *State v. Lopez*, 153 Ariz. 285, 285 (1987); *accord* A.R.S. § 13-712(B).

**¶32** At sentencing, without objection, Whitlock received 95 days' credit. Whitlock was first arrested on July 29, 2014 and released on bond on August 28, 2014 (31 days). She was re-arrested on September 11, 2015 and remained in custody until sentencing on January 13, 2016 (124 days). Whitlock was thus incarcerated for a total of 155 days before sentencing and should have received 60 additional days of presentence incarceration credit. We modify her sentence to so reflect. *See* Ariz. R. Crim. P. 31.17(b); *State v. Stevens*, 173 Ariz. 494, 495–96 (App. 1992) (modifying sentence to reflect correct presentence incarceration credit).

## CONCLUSION

**¶33** We affirm Whitlock's convictions, but modify her sentences to reflect 60 additional days of presentence incarceration credit.



AMY M. WOOD • Clerk of the Court
FILED: AA